**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 7 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JUDITH AGUILERA; MARIO
AGUILERA; SKYE SINGH; AMAN
SINGH; LUCIA FIERRO; RICHARD
SCHULL,

        Plaintiffs - Appellants,

    v.

WAYNE KIRKPATRICK, Acting
OIC; JOSEPH GREENE, District
Director, INS; JANET RENO, U.S.
Attorney General,

        Defendants - Appellees.

No. 00-4008

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 99-CV-37-B)

---

Todd A. Utzinger (Hakeem Ishola, on the brief), Ishola, Utzinger & Perretta, Salt
Lake City, Utah, appearing for Appellants.

Francis W. Fraser, Attorney (John J. Andre, Senior Litigation Counsel, with him
on the brief), Office of Immigration Litigation, United States Department of
Justice, Washington, DC, appearing for Appellees.

---

Before **TACHA** , Chief Judge, **McWILLIAMS** and **MURPHY** , Circuit Judges.

---

**TACHA** , Chief Judge.

Petitioners appeal the district court's dismissal of their habeas corpus petition for lack of subject matter jurisdiction. Although we hold that we do have jurisdiction under 28 U.S.C. § 2241, we dismiss because Petitioners fail to state a claim upon which relief can be granted.

## I. Background

**A.    Factual Background**

**1.    Petitioners Mario and Judith Aguilera**

On January 26, 1995, an immigration judge denied Petitioner Mario Aguilera's asylum application. Mr. Aguilera, a citizen and native of Chile, appealed to the Board of Immigration Appeals (BIA), which affirmed the immigration judge's decision on October 12, 1995. Mr. Aguilera did not exercise his statutory right to appeal to this court. On October 25, 1995, after Mr. Aguilera's final order of deportation had been entered, he married Petitioner Judith Aguilera, a U.S. citizen. In addition to Mr. Aguilera's two sons from a previous marriage, Mr. and Mrs. Aguilera have two daughters, who were born in the United States. In May 1997, Mrs. Aguilera filed Form I-30 immediate relative visa petitions for her husband and step-children. The next year, the Immigration and Naturalization Service (INS) approved the I-30 visa petitions, allowing Mr. Aguilera and his children to apply for legal permanent residency.

Mr. Aguilera did not return to Chile after his asylum application was

denied, and on October 8, 1997, the INS issued a warrant of deportation. In 1998, he was convicted for using a false social security number in violation of 42 U.S.C. § 408(a)(7)(B), for which he was sentenced to six months in jail. Upon his release, the INS agreed to stay his deportation for a year, expiring on February 27, 1999, or until he reopened his deportation proceedings to apply for adjustment of status based on his marriage to a U.S. citizen. Before the expiration of his sentence, Mr. Aguilera sought to reopen his deportation proceedings under 8 C.F.R. § 3.2(c)(3)(iii), which allows the filing of an untimely motion to reopen if and when the INS jointly files such motion. The INS did not, however, agree to join his motion to reopen.

2.      **Petitioners Arman and Skye Singh**

On January 29, 1997, the BIA affirmed an immigration judge's denial of Petitioner Arman Singh's asylum application. Mr. Singh, a citizen and native of India, then filed a petition for review with this court but withdrew it on May 9, 1997 after we refused to grant a stay of deportation while his appeal was pending. In April 1997, while his case was still pending, Mr. Singh married Petitioner Skye Singh, a U.S. citizen. A few months later, Mrs. Singh filed an I-30 visa petition for her husband. On September 29, 1997, after the INS approved the petition, Mr. Singh requested the INS join in his motion to reopen his deportation proceedings to apply for adjustment of status. The following year, in November

1998, the INS declined to jointly file his motion to reopen, arresting Mr. Singh two days later but releasing him on his own recognizance. Subsequently, the INS placed Mr. Singh on supervised release and ordered that he deport himself by January 25, 1999.

### 3. Petitioners Lucia Fierro and Richard Schull

After being denied asylum by INS asylum officers, Petitioner Lucia Fierro, a citizen and native of Mexico, was placed in deportation proceedings. On November 15, 1996, because Ms. Fierro failed to appear for her deportation hearing, an immigration judge entered an in absentia deportation order. After Ms. Fierro failed to appeal the order, it became final, and on November 23, 1996, the INS issued a warrant of deportation. Subsequently, in October 1997, she married Petitioner Richard Schull, a U.S. citizen, who filed an I-30 visa petition for her. In November 1998, the INS approved the petition. Around that time, the couple also had their first child. The following February, Ms. Fierro filed a motion to reopen with the immigration court, requesting the INS join in her motion. The INS declined to do so.

### B. Legal and Procedural Background

Under 8 C.F.R. § 3.2(c)(2), an alien may file a motion to reopen before either the BIA or the immigration judge on or before September 30, 1996, or no later than ninety days after entry of the final administrative decision, whichever

date is later. All the petitioners failed to file motions to reopen within the requisite ninety days, or before the 1996 deadline, so their motions are time barred unless they satisfy one of the exceptions listed under 8 C.F.R. § 3.2(c)(3), which includes an exception for motions to reopen joined by the INS, 8 C.F.R. § 3.2(c)(3)(iii).

Because their motions are otherwise time barred, the petitioners attempted to meet one of the regulation's exceptions, asking the INS to join their motions to reopen under 8 C.F.R. § 3.2(c)(3)(iii). The INS refused, and the petitioners subsequently filed a habeas corpus petition in federal district court seeking temporary and permanent injunctive and mandamus relief enjoining the INS from applying 8 C.F.R. § 3.2 arbitrarily and capriciously and staying their deportation. Specifically, the petitioners alleged the INS arbitrarily and capriciously applied 8 C.F.R. § 3.2 in violation of their due process rights, in particular the citizen-petitioners' substantive rights to marry, remain, and work in the United States. They also alleged that the regulation is an unconstitutional delegation of authority to the Attorney General.

Defendants moved to dismiss the petitioners' claims for both lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). The district court dismissed the petition for lack of jurisdiction, adopting the reasons stated in the defendants'

memorandum in support of their motion to dismiss.[1] Despite the court's statement that it dismissed for lack of jurisdiction, its order is ambiguous because it adopts the reasons in the defendants' memorandum without distinguishing those arguments based on jurisdiction from those based on failure to state a claim. Even if we presume, however, that the district court order incorporates only the defendants' jurisdictional arguments, we may nevertheless affirm on the ground that the petitioners fail to state a claim upon which relief can be granted. Remanding the case for dismissal under Rule 12(b)(6) would indeed be a "futile exercise." Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 239 (3d Cir. 1980) (affirming district's court's dismissal for lack of jurisdiction on ground that plaintiff failed to state a claim under Rule 12(b)(6)); accord Chiplin Enters., Inc. v. City of Lebanon, 712 F.2d 1524, 1528-29 (1st Cir. 1983); Sacks v. Reynolds Sec., Inc., 593 F.2d 1234, 1239 (D.C. Cir. 1978); Carr v. Learner, 547 F.2d 135, 137 (1st Cir. 1976); see also United States v. Sandia, 188 F.3d 1215, 1217 (10th Cir. 1999) (recognizing this court may affirm a district

---

[1] The district court granted the petitioners' motion to vacate its initial order, dated October 13, 1999, recognizing its error in relying on Immigration and Nationality Act (INA) § 242(e)(3), 8 U.S.C. § 1252(e)(3), in dismissing for lack of jurisdiction. In its revised order, dated December 21, 1999, the court again dismissed for lack of jurisdiction, adopting the arguments outlined in the defendants' memorandum in support of the motion to dismiss. The defendants argued that INA § 242(g), 8 U.S.C. § 1252(g), divests the court of jurisdiction over the petitioners' claims and that, in the alternative, the petitioners fail to state a claim upon which relief can be granted.

court decision on grounds not relied on by the district court if the record supports conclusions of law). As such, we hold that, although the district court had subject matter jurisdiction over the petitioners' claims under 28 U.S.C. § 2241, it should have dismissed for failure to state a claim under Rule 12(b)(6). We therefore affirm the district court's dismissal but on the alternative ground that the petitioners fail to state a claim upon which relief can be granted.

## II. Jurisdiction

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, amended by Act of Oct. 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656. IIRIRA dramatically changed the Immigration and Nationality Act (INA), in particular limiting the availability of judicial review of removal orders. Because the petitioners' deportation proceedings were not commenced on or after IIRIRA's effective date, April 1, 1997, most of the new provisions do not apply to them. [2]

---

[2] Because the INS commenced deportation proceedings against Petitioners Singh and Fierro before IIRIRA's effective date, April 1, 1997, and their final orders were entered after October 31, 1996, judicial review of their claims is governed by the pre-IIRIRA rules as amended by IIRIRA's transitional rules. See IIRIRA § 306(c)(1), reprinted as amended in 8 U.S.C. § 1252 note; IIRIRA 309(a), (c)(1) & (4), reprinted as amended in 8 U.S.C. § 1101 note. Although Petitioner Aguilera's final deportation order was entered before October 31, 1996, his request that the INS join his motion to reopen is part of deportation proceedings that commenced before April 1, 1997. Thus, neither the IIRIRA's permanent "new" rules nor its transitional rules govern his claims related to that request. See id. These distinctions do not affect the provision at issue in this

IIRIRA § 309(c), reprinted in 8 U.S.C. § 1101 note. The INS argues, however, that one jurisdictional provision, INA § 242(g), applies to the petitioners and forecloses any judicial review, including habeas review, in this case. INA § 242(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This provision applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1), reprinted in 8 U.S.C. § 1252 note. Because INA § 242(g) applies to past and pending deportation proceedings, it clearly applies to the petitioners' claims.

The question we must therefore resolve is whether INA § 242(g) precludes judicial review of the petitioners' constitutional claims regarding their motions to reopen under 8 C.F.R. § 3.2(c)(3)(iii). The INS argues that INA § 242(g) forecloses judicial review because the petitioners' claims concern decisions by the Attorney General to adjudicate cases and execute final deportation orders, two of the "three discrete actions" covered by INA § 242(g). Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). The Supreme Court has held,

---

case, INA § 242(g), because it explicitly applies to claims arising from all past, pending, and future removal proceedings. IIRIRA § 306(c)(1).

however, that INA § 242(g) is not a "zipper" clause foreclosing all deportation claims.  Id.  Interpreting the provision narrowly, the Court has said that many decisions fall outside the three discrete actions by the Attorney General to "commence proceedings, adjudicate cases, or execute removal orders."        Id.  The Court provided examples of such decisions, including "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and  *to refuse reconsideration of that order*    ."  Id. (emphasis added).

A decision refusing to reopen a removal order is analogous to a decision refusing reconsideration of that order, which is listed among the Supreme Court's examples of decisions   *not* covered by INA § 242(g).  Both a motion to reconsider and a motion to reopen involve requests for relief from removal decisions rendered by an immigration judge or the BIA.  Indeed, both decisions are covered by the same regulation, 8 C.F.R. § 3.2, which is entitled "Reopening or reconsideration before the Board of Immigration Appeals."  Several of the regulation's subsections establish procedural rules applicable to both kinds of decisions.  See 8 C.F.R. § 3.2(a), (d)-(i).  In light of the two decisions' close relationship and the Supreme Court's narrow interpretation of INA § 242(g), we hold that a decision regarding a motion to reopen falls outside INA § 242(g)'s jurisdictional limitation.  The INA does not therefore preclude our review of the

petitioners' claims.

Furthermore, our decision in Ho v. Greene, 204 F.3d 1045 (10th Cir. 2000), supports our conclusion that we have jurisdiction over the petitioners' claims that 8 C.F.R. § 3.2(c)(3)(iii) is unconstitutional. In determining whether we had habeas jurisdiction, we held that two permanent provisions, including INA § 242(g), precluded judicial review of certain discretionary decisions by the Attorney General but did not preclude review of claims that "challenge the validity and constitutionality of the statutes authorizing the continued detention of removable aliens." Greene, 204 F.3d at 1052. Although the petitioners in this case are not being "detained," they are "in custody" for habeas purposes because they are subject to final deportation orders. Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) ("[T]here is general consensus that an alien whose liberty is restricted pursuant to an order emanating from the INS is 'in custody' for purposes of satisfying the prerequisites for habeas review."); Mustata v. Dep't of Justice, 179 F.3d 1017, 1021 n.4 (6th Cir. 1999) (holding a final deportation order places an alien constructively "in custody" because of "the specialized meaning those words have in the context of an immigration-related habeas petition"). Because the petitioners are clearly challenging "the validity and constitutionality of the statutes" governing their final deportation orders, our reasoning in Ho v. Greene is apposite: statutes, such as INA § 242(g), restricting

-10-

judicial review of discretionary decisions do not preclude review of claims challenging the constitutionality of those statutes.

We therefore exercise jurisdiction under the general habeas statute, 28 U.S.C. § 2241, which permits the granting of a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Jurado-Gutierrez v. Greene , 190 F.3d 1135, 1145 (10th Cir. 1999) (en banc) (noting that alien may seek habeas review under both the INA and 28 U.S.C. § 2241). In holding we may exercise habeas jurisdiction, we emphasize we do so pursuant to § 2241 and need not therefore grant a certificate of appealability as is required in some habeas cases. Bradshaw v. Story , 86 F.3d 164, 166 (10th Cir. 1996); accord Ojo v. INS , 106 F.3d 680, 681-82 (5th Cir. 1997).

## II. Standard of Review

We review a district court's dismissal for lack of subject matter jurisdiction de novo. Johnson v. Rodrigues , 226 F.3d 1103, 1107 (10th Cir. 2000) (en banc); U.S. West Inc. v. Tristani , 182 F.3d 1202, 1206 (10th Cir. 1999) (reviewing dismissal under Rule 12(b)(1) de novo). In addition, because the legal sufficiency of a complaint is a question of law, we review dismissals under Rule 12(b)(6) for failure to state a claim de novo. Sutton v. Utah State Sch. for the Deaf & Blind , 173 F.3d 1226, 1236 (10th Cir. 1999). A court considering a Rule 12(b)(6)

motion will not weigh potential evidence, accepting instead all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the nonmoving party. Id. A court should not grant a Rule 12(b)(6) motion "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

### III. Discussion

The petitioners contend that 8 C.F.R. § 3.2(c)(3)(iii) is unconstitutional for several reasons. Their first assertion that the Attorney General lacks the authority to promulgate the regulation is clearly without merit. Congress has explicitly delegated much of its power over immigration to the Attorney General. See, e.g., 8 U.S.C. § 1103(a)(3); Immigration Act of 1990 § 545(d), Pub. L. No. 101-649, 104 Stat. 4978 (providing Attorney General shall issue regulations limiting time period for motions to reopen and reconsider), reprinted in 8 U.S.C. § 1252 note. Their remaining arguments regarding violations of their due process rights fail to state a legally cognizable cause of action because the petitioners have no constitutionally protected interest under either the Fifth Amendment or the regulation itself.

Courts have long recognized Congress's plenary power over matters of immigration. Kleindienst v. Mandel, 408 U.S. 753, 766 (1972). Recognizing that

-12-

decisions regarding the admission and exclusion of aliens are most appropriately relegated to the political branches of government, courts ensure only that the Executive Branch enforces immigration laws in accordance with the procedural safeguards established by Congress. Id. Moreover, the procedural safeguards are minimal because aliens do not have a constitutional right to enter or remain in the United States. Bassett v. INS, 581 F.2d 1385, 1386-87 (10th Cir. 1978) (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 586-89 (1952)). When facing deportation, however, aliens are entitled to procedural due process, which provides an "'opportunity to be heard at a meaningful time and in a meaningful manner.'" Llana-Castellon v. INS, 16 F.3d 1093, 1096 (10th Cir. 1994) (internal quotations omitted) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (acknowledging that "[n]umerous courts have recognized" the Due Process Clause protects an alien's liberty interest in the "fundamental fairness" of a deportation proceeding). Beyond this basic protection guaranteed by the Fifth Amendment, any alleged liberty interest must be created by statute or regulation. Velasco-Gutierrez v. Crossland, 732 F.2d 792, 796 (10th Cir. 1984).

The petitioners do not challenge their deportation proceedings. Each petitioner has had an opportunity to be heard "at a meaningful time and in a meaningful manner" before an immigration judge with the opportunity to appeal

to the BIA followed by limited review in this court.  Because their deportation proceedings satisfy the procedural due process required by the Constitution, their protected liberty interest must arise under the regulation itself.  In order for the regulation to create a liberty interest, it must substantively limit the exercise of official discretion through specifically defined criteria that guide official decision making.  Id. (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)).  If the government official may deny relief for "'any constitutionally permissible reason or for no reason at all,'" the statute or regulation does not create a protected liberty interest.  Olim, 461 U.S. at 249 (quoting Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 467 (1981) (Brennan, J., concurring)).

The regulation challenged by the petitioners clearly does not create a liberty interest.  The provision of 8 C.F.R. § 3.2 at issue provides an exception to the time limit for filing a motion to reopen, allowing a petitioner to file a motion "[a]greed upon by all the parties and jointly filed."  8 C.F.R. § 3.2(c)(3)(iii).  Because the regulation lacks criteria or standards limiting official discretion, the government has unfettered discretion to deny the requested relief for no reason at all.  The petitioners' failure to receive discretionary relief does not therefore rise to a constitutionally protected interest.  See Velasco-Gutierrez, 732 F.2d at 797 (holding no protected liberty interest in deferred action status); Prado v. Reno, 198 F.3d 286, 292 (1st Cir. 1999) (holding petitioner's appeal of BIA decision

-14-

denying her motion to reopen was not justiciable because the regulation contains no standards for the exercise of discretion); Rodriguez , 178 F.3d at 1147-48 (holding that remedy of suspension of deportation does not create protected liberty interest); Achacoso-Sanchez v. INS , 779 F.2d 1260, 1264 (7th Cir. 1985) (holding alien had no liberty interest in reopening deportation proceedings or adjustment of status because statute and regulations did not create any entitlement to relief).

In addition, the citizen-petitioners argue that the INS's refusal to join in their spouses' motions to reopen violates their substantive right to marry. This argument clearly fails because we have previously rejected similar claims by family members of deportable aliens, as have our sister circuits. E.g. , Cervantes v. INS , 510 F.2d 89, 91-92 (10th Cir. 1975) (holding family members of deported alien do not have constitutionally protected interest); accord Almario v. Attorney Gen. , 872 F.2d 147, 151 (6th Cir. 1989); Garcia v. Boldin , 691 F.2d 1172, 1183 (5th Cir.1982). Furthermore, the citizen-plaintiffs do not have standing under 28 U.S.C. § 2241 because they cannot claim to be "in custody in violation of the Constitution or laws of the United States." The writ of habeas corpus may not extend to them because, unlike their spouses, they are not subject to deportation and therefore not "in custody."

Because the petitioners fail to state a claim upon which relief can be

granted, we AFFIRM the district court's decision to dismiss.