**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 26 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NORMA LIVSEY, KIPP LIVSEY, and
KELLY LIVSEY,

      Plaintiffs-Appellants,

v.

      No. 00-4005

SALT LAKE COUNTY and SGT. JIM
POTTER,

      Defendants-Appellees.

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 99-CV-564)**

Robert H. Copier, Salt Lake City, Utah, for Plaintiffs-Appellants.

T.J. Tsakalos, Deputy District Attorney (David E. Yocom, Salt Lake County
District Attorney, with him on the brief), Salt Lake City, Utah, for Defendants-
Appellees.

Before **SEYMOUR** and **HENRY**, Circuit Judges, and **OBERDORFER**, District
Judge.[*]

---

      [*]     The Honorable Louis F. Oberdorfer, United States District Judge for the
District of the District of Columbia, sitting by designation.

**OBERDORFER**, District Judge.

Norma Livsey, Kipp Livsey, and Kelly Livsey brought this action under 42 U.S.C. § 1983 against Salt Lake County and Jim Potter, a County police officer. The complaint alleged that the plaintiffs' constitutional rights were infringed by a statement by Potter published in a local newspaper about the sexual behavior of a deceased member of the plaintiffs' family and by the County's failure to grant the plaintiffs' request for a name-clearing hearing for the decedent. The district court dismissed the complaint for failure to state a claim, and later denied the plaintiffs' motion for reconsideration and for leave to amend. The plaintiffs appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

On August 27, 1997, the *Deseret News*, a local newspaper in Salt Lake County, published an article reporting that:

> Hikers found the body of a man, identified only as a white male in his 60s, Tuesday night about 30 yards from a dirt trail near 3000 E. Emigration Canyon Road. Police first suspected foul play in the death but are now saying the death was an accident. 'It looks like it was one of those autoerotic things.' Salt Lake County Sheriff's Sgt. Jim Potter said Wednesday. 'We're still waiting for the autopsy results, but there was some type of binding involved.'

Appellant's App. at 10. Subsequently, the body was publicly identified as one Edward J. Livsey, the husband of Norma Livsey and the father of Kipp and Kelly Livsey.

Further investigation led to criminal charges, a widely-publicized trial, and a murder conviction. The record on appeal does not include any details about the criminal trial. On April 24, 1998, citing Potter's statements to the press, as reported, Kipp and Kelly Livsey filed a written request with the Salt Lake County governing body requesting an administrative name-clearing hearing. No one representing Salt Lake County responded to this petition.

On July 22, 1999, the plaintiffs filed a complaint in the United States District Court for the District of Utah against the County and Potter. The complaint alleged that Potter's statement, along with the denial of the name-clearing hearing, "deprived [them] of their liberty and privacy interests secured under the constitution and the laws" and actionable under 42 U.S.C. § 1983.

The defendants filed a motion to dismiss for failure to state a claim on the grounds that (1) that the plaintiffs could not vicariously assert the constitutional rights of her husband and their father; (2) that *Paul v. Davis*, 424 U.S. 693 (1976), and its progeny establish that mere defamation or slander cannot support a procedural due process claim; and (3) that the complaint did not allege an official policy, practice or custom as required to bring a claim against the County. In their opposition, the plaintiffs responded that (1) they were not asserting a vicarious claim but rather their own personal constitutional rights to liberty and property (2) that even after *Paul v. Davis* their procedural due process claim was

rendered viable by Utah's constitutional provisions and legislation protecting crime victims' rights, and (3) that their claims against the County were direct claims because Potter was the County spokesperson and because the County was responsible for the denial of the name-clearing hearing.

Before the district court ruled on the defendants' motion to dismiss, and before the hearing on that motion, the plaintiffs filed their own motion for summary judgment. In that motion they contended that they were entitled to summary judgment on three issues of law: (1) whether the failure to grant a hearing "shocked the conscience" and thus violated the plaintiffs' rights to substantive due process; (2) whether Potter's statement "shocked the conscience" and thus violated the plaintiffs' rights to substantive due process; and (3) whether their rights as crime victims under Utah's constitution and laws was a constitutionally-protected liberty interest that triggered a right to procedural due process. Also prior to the hearing on the defendants' motion to dismiss, the plaintiffs filed a motion to strike the defendants' reply contending that it attempted to claim for the first time that the plaintiffs' complaint was limited to procedural due process claims. The plaintiffs asserted in their memorandum in support of their motion to strike that they were also bringing a substantive due process claim on the ground that the government action "shocked the conscience." At the hearing on the motion to dismiss, the plaintiffs emphasized that it was their

position that *Paul v. Davis* did not require dismissal of their entire complaint because it did not apply to "all of the other liberty and privacy interests under the constitution and laws such as substantive due process and privacy" which the plaintiffs also intended their complaint to raise. Appellants' App. at 18.

Also at the hearing, the district court asked the defendants' attorney "[j]ust as a matter of curiosity" why no name-clearing hearing had been granted. The attorney responded:

> Your Honor, there's two sides to every story on this case, and there are lots of things that happened here. The body was found, okay? And then there was a criminal prosecution and a trial which was widely publicized. And what was that trial about? It was about how this man died. And in this case what came out, the truth was worse than the fiction. And so a name-clearing hearing, with all due respect, I don't think was appropriate.

*Id.* at 29.

The district court granted the defendants' motion to dismiss. The court concluded that (1) the procedural due process claim against Potter would be dismissed because *Paul v. Davis* established that damage to one's reputation by itself is insufficient to support a procedural due process claim and because the plaintiffs were not "crime victims" within the meaning of the Utah Constitution and statutes; and (2) the claim against the County would be dismissed because there was no underlying constitutional violation. Appellant's App. at 23-25. Despite the district court's statement at the hearing that "it sounds to me like what

-5-

[the plaintiffs' attorney] is arguing is that your individual privacy and/or liberty interests may be infringed and/or violated if someone does or says certain things about a member of your family," Appellee's App. at 27, the district court dismissed the complaint in its entirety without directly addressing these claims on the merits. The district court did, however, opine, in the context of denying the plaintiffs' motion to strike the defendants' reply, that the complaint did not adequately plead a substantive due process claim. Appellant's App. at 21.

The plaintiffs then filed a motion for reconsideration under Federal Rule of Civil Procedure 59, seeking to amend their complaint to include substantive due process and privacy claims. The district court denied their motion. With respect to the plaintiffs' claim that "justice will be served by having plaintiffs' claims for 'substantive due process' and 'privacy' violations adjudicated together with their 'procedural due process claim,'" *id.* at 26, the court responded that "[t]he arguments Plaintiffs now make were previously advanced, considered, and rejected by this Court," *id.* at 28.

On appeal, the plaintiffs contend that the district court erred because (1) Potter's disclosure to the press of private sexual practices attributed to the decedent breached the plaintiffs' constitutional right to privacy; (2) Potter's disclosure along with the County's refusal to grant a name-clearing hearing deprived the plaintiffs of their constitutional right to substantive due process; and

(3) the County is liable on both claims. These issues involve questions of law which we review de novo. *Dang v. UNUM Life Ins. Co.*, 175 F.3d 1186, 1189 (10th Cir.1999); *Estate of Holl v. Commissioner*, 967 F.2d 1437, 1438 (10th Cir.1992). We address each issue in turn.

II

A.    Constitutional Right to Privacy

The plaintiffs contend that Potter breached their constitutional right to privacy when he disclosed to the press sexual information about the deceased without any government interest justifying the disclosure. They claim that an individual's right to privacy encompasses the right not to have information revealed about a spouse's sexual behavior where that behavior necessarily reflects upon or reveals the intimate details of a marital relationship.[1]

The Supreme Court has recognized that one component of the right to privacy is "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). We have further explained that:

> Due process . . . implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state. Information falls within the ambit of constitutional protection when an individual has a legitimate expectation . . . that it will remain confidential while in the state's possession. The legitimacy of this

---

[1]Although the plaintiffs do not distinguish among themselves with respect to the right to privacy claim, counsel's oral argument made clear that it pertains only to Norma Livsey, the decedent's spouse.

> expectation depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses. If an individual has a legitimate expectation of confidentiality, then disclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner.

*Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir.), *cert. denied*, 516 U.S. 817 (1995).

With respect to the question of when an individual has a legitimate expectation that information will remain confidential, we have held that an individual's expectation of privacy for constitutional purposes is legitimate only if the information is "highly personal or intimate." *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). We have applied this test in a number of cases. *Compare Nilson*, 45 F.3d at 372 (no legitimate expectation of privacy in expunged criminal record); *Flanagan v. Munger*, 890 F.2d 1557, 1570-1 (10th Cir. 1989) (no legitimate expectation of privacy in police internal investigation files); *Stidham v. Peace Officers Standards and Training*, 265 F.3d 1144, 1155 (10th Cir. 2001) (no legitimate expectation of privacy in reasons for resignation or employee evaluations or allegations of rape and assault); *with Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000) (legitimate expectation of privacy in nondisclosure of HIV status), *cert. denied*, 122 S. Ct. 96 (2001); *Sheets*, 45 F.3d at 1387 (legitimate expectation of privacy in wife's diary as it pertained to intimate marital matters); *A.L.A. v. West Valley City*, 26 F.3d 989, 990-01 (10th Cir. 1994) (legitimate

expectation of privacy in confidential medical records).

Of our prior decisions, only *Sheets*, inexplicably not cited by either party, involved the right to privacy in the context of a marital relationship. In *Sheets*, we held that the plaintiff, who had turned over his wife's diary to the police to aid in the investigation of her murder, had a legitimate expectation that the contents of the diary pertaining to matters personal to him, such as his wife's written perception of their marriage, would remain confidential. 45 F.3d at 1388. The court held that "the fact that [the plaintiff] did not author the information does not prohibit him from having a distinct privacy interest in the dissemination of information written about the personal aspects of his life." *Id.*

In the present case, the decedent arguably might have had a legitimate expectation of privacy in the disclosed information pertaining, as it did, to highly personal sexual behavior. Here, however, the complicating factor is that the plaintiff, Norma Livsey, is the surviving spouse of the individual directly implicated by the disclosed information. Whether she has a legitimate expectation of privacy in this information about her spouse is an issue of first impression. It is obviously not easy to define the limits of an individual's right to privacy in the context of intimate, personal matters. On the one hand, information about the sexual behavior of one's spouse will sometimes reveal, however unintentionally, intimate and personal information about a marital relationship.

-9-

While Potter's statement did not name or otherwise identify the decedent, or his spouse, it is reasonable to infer that, in time, their identities came into focus. On the other hand, it would be almost impossible to define the limits of the right to privacy if it encompassed information about a spouse's behavior any time that behavior arguably reflected on the marital relationship. Ultimately, we feel compelled in this case to draw the line around the individual directly implicated by or involved in the intimate or personal material revealed. Any other conclusion would stretch the right to privacy beyond any reasonable limits. Our decision in *Sheets* is not to the contrary. In *Sheets*, the revealed information, although found in his wife's diary, directly concerned the plaintiff and his marriage. Here, the contested disclosure directly concerned only the behavior of an unnamed decedent; it revealed no information about Norma Livsey or her marital relationship as such, only an opportunity for some prurient readers to speculate about that relationship after authorities had identified her husband as the decedent to whom Potter had referred. Accordingly, we conclude that Norma Livsey did not have a legitimate expectation that the information revealed by Potter about her deceased husband would remain confidential. Having reached this conclusion, we need not decide whether there was a compelling government interest justifying the disclosure or whether the disclosure was the least intrusive means of serving that interest. *See Falvo v. Owasso Independent School Dist. No.*

*I-011*, 233 F.3d 1203, 1209 (10ᵗʰ Cir. 2000), *cert. granted on other grounds*, 121 S. Ct. 2547 (June 25, 2001).

B.      Substantive Due Process

The plaintiffs also assert that Potter's statement, coupled with the County's refusal to grant a name-clearing hearing, deprived them of their right to substantive due process.

The defendants first argue that the plaintiffs' substantive due process claim should not be considered on appeal because the plaintiffs' complaint failed to adequately plead such a claim and because the plaintiffs were accorded an opportunity and had an obligation to amend their complaint, but elected not to do so.  While the complaint is not a model of clarity, it is clear from the transcript of the oral argument on the defendants' motion to dismiss that the plaintiffs intended their complaint to plead a substantive due process claim, and that the district court clearly understood that.  *See* Appellee's App. at 27.  The district court's subsequent rulings are confusing: first, in granting the defendants' motion to dismiss it found that the complaint did not adequately plead a substantive due process claim; then, in denying the plaintiffs' motion for reconsideration and for leave to amend to add a substantive due process claim, the Court held that it had

previously ruled on all claims on the merits.[2]  Taking the district court at its word, as reflected in its most recent order, we are persuaded that the plaintiffs properly sought reinstatement of their substantive due process claim on appeal.

With respect to the merits, the question remains whether the defendants' actions, as alleged, deprived the plaintiffs of their right to substantive due process.  "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'"  *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995), *cert. denied*, 516 U.S. 1118 (1996) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528-29 (10th Cir.1998).

> To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.  Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. . . . The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct.

*Tonkovich*, 159 F.3d at 528 (internal quotations and citations omitted).

Here, the plaintiffs contend that "[t]he gratuitous disclosure of personal

---

[2] As noted supra, in denying the plaintiffs' motion for reconsideration, the district court stated that "[t]he arguments Plaintiffs now make were previously advanced, considered, and rejected by this Court."  Appellant's App. at 28.

private sexual practices when there was no governmental interest in such disclosure, coupled with Salt Lake County's refusal to grant a hearing . . . shocks the conscience." The defendants respond that "a comment in a single newspaper article about an unidentified body found under unusual circumstances, bears no resemblance to the factual scenarios where federal courts have found conduct that "shocks the conscience" of judges. Appellees' Br. at 22. We agree. The defendants' conduct, however ill-advised, inappropriate, or ill-considered it might have been, does not "shock the conscience of federal judges" – at least not the conscience of these three federal judges.[3]

C.     County Liability

The plaintiffs contend that the county is liable for the infringements of the plaintiffs' rights to privacy and substantive due process. Having concluded that the plaintiffs' underlying constitutional claims are not viable, this claim similarly fails. A municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights. *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the

---

[3]It is apparent from the entire record and proceedings before the district court that the district judge reached the same conclusion.

-13-

departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

For the foregoing reasons, we AFFIRM the district court.