Peggy Gallo LOEKS, on behalf of T.L.,
a minor, Plaintiff–Appellant,

v.

Richard Eugene REYNOLDS, Deputy
Chris Washburn, in his individual ca-
pacity, Douglas County Sheriff's Of-
fice, Defendants–Appellants.

No. 01–1183.

United States Court of Appeals,
Tenth Circuit.

April 12, 2002.

Before LUCERO and MURPHY, Circuit Judges, and ALLEY, Senior District Judge.*

## ORDER AND JUDGMENT **

ALLEY, Senior District Judge.

This civil rights case under 42 U.S.C. § 1983 involves a press release issued by the Douglas County Sheriff's Office concerning the rape of appellant's minor daughter, T.L., by appellee Richard Reynolds. The district court granted summary judgment to the county defendants because the press release was substantially true, dismissed the federal claim against Reynolds because he was not a state actor, and dismissed supplemental state law claims without prejudice. Appellant challenges each of these rulings. We exercise jurisdiction under 28 U.S.C. § 1921, and affirm.

### *Factual and Procedural Background* [1]

T.L. met Reynolds through an internet chat room in October 1997. T.L. was then 13 years old; Reynolds was 18 years old. They corresponded and later agreed to meet for a date. T.L. told her mother that

she was going to a friend's house. On October 24, 1997, Reynolds picked up T.L. from her home in Parker, Colorado, driving a minivan. They went to a fast food restaurant and a movie. A heavy snowstorm that night caused their vehicle to become stuck in the snow. While they were stranded, Reynolds and T.L. had sexual intercourse in the van. T.L. did not view it as rape at the time or characterize it that way in initial interviews with law enforcement officers.

On the night of the incident, appellant discovered that T.L. was not at her friend's house and called police. After the roads were cleared of snow and T.L. returned home, she talked with her parents and then was interviewed by Officer Philip Saraff of the Parker Police Department. At one point, Officer Saraff asked T.L. whether she had consensual sex with Reynolds, and T.L. responded that she did not know what consensual meant. Officer Saraff told her that sex was consensual if she agreed to it. T.L. then indicated that her sexual intercourse with Reynolds was consensual. Officer Saraff wrote in his report that T.L. "stated that she and Rich had consensual intercourse." (App.106.)

Because the police investigation revealed that the alleged assault occurred outside the City of Parker, the Douglas County Sheriff's Office took over the case. When Deputy Chris Washburn arrived, he also interviewed T.L. at her home. T.L. indicated during this interview that she had agreed to have sex with Reynolds, and

---

* The Honorable Wayne E. Alley, Senior District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order

and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. We state here undisputed facts relevant to the summary judgment ruling and allegations needed to understand the issues. Specific allegations pertinent to Reynolds' dismissal will be presented in the discussion of that issue.

Deputy Washburn included in his report a statement that T.L. "allowed [Reynolds] to have sex with her." (App.116.)

A few days later, the Public Information Officer for the sheriff's office, Sergeant Atilla Denes, issued a press release regarding the subject, " 'Chat room' encounter leads to second Internet-related sex arrest in five weeks." The release contained information about Reynolds and his arrest for "sexual assault on a child." (App.123.) It also included the following account of the alleged crime:

Reynolds was arrested after a 13–year–old Parker girl told police that she had sex with Reynolds in his van after they got stuck in a snow drift south of Parker Friday night. According to the girl, she met Reynolds in an Internet "chat room" on October 16th. The two reportedly continued to correspond by e-mail and the U.S. Mail, and ultimately decided to meet each other Friday.

Reynolds picked the girl up at her home Friday afternoon. After the pair got stuck in the deep snow in a parking lot just off Highway 83, they went to the back of Reynolds' van, where they had what the victim described as "consensual" sex. Under Colorado law, a victim cannot consent to sex if she is less than 15 years old and the actor is more than 4 years older than the victim.

(App.123.) The statement then recounted another arrest the previous month when a 26–year–old man allegedly met a 15–year–old girl on the internet and "convinced her to model for sexually suggestive photographs." (App.123.) The report concluded with the following advice:

Sheriff's officials say that these incidents point out the need for parents to be aware of who their children are communicating with on-line. Sergeant Holly Nicholson–Kluth of the Douglas County Sheriff's Office Crimes Against Persons Unit said that "[s]exual predators hang out in chat rooms just waiting to swoop down" on unsuspecting victims. She urged parents to monitor their children's Internet access, and to be particularly vigilant of any on-line conversations with sexual undertones.

(App.123.)

Appellant filed suit under § 1983 claiming that defendants violated her daughter's constitutional rights of privacy and association and defamed T.L. by publishing an account of the incident containing a false statement that the pair "had what the victim described as 'consensual' sex." Appellant complained that T.L. did not describe the sexual intercourse as "consensual" but the press release indicated that she did. This untrue statement, she alleged, was knowingly or recklessly made. Appellant also alleged that the press release provided sufficient information to permit T.L. to be identified by people who knew her, even though it did not state her name, and caused T.L. to be ostracized and ridiculed by peers. In addition, appellant sued Reynolds on tort claims of sexual assault and outrageous conduct.

The district court granted summary judgment to the Douglas County Sheriff's Office and Deputy Washburn on the ground that the press release was substantially true. The district court reasoned that the complaint alleged violations of privacy and association rights and defamation as separate § 1983 claims but that all of the claims relied on the publication of a false statement. The district court therefore treated as dispositive the issue whether the press release was false, and found that it was not. The court relied on evidence that T.L. admitted telling Washburn and others that she had agreed to have sex with Reynolds and concluded that the gist of the statement was true, even if T.L. did not use the word "consensual." The dis-

trict court granted Reynold's motion to dismiss the § 1983 action against him due to a lack of allegations that he acted under color of state law. Absent a federal claim, the court declined to exercise supplemental jurisdiction of the state law claims.

### Standards of Review

We review a summary judgment decision de novo, applying the same legal standard used by the district court. *Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228, 1237 (10th Cir.2000); *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir.1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the facts and draw all reasonable inferences in favor of the nonmoving party. *Penry,* 155 F.3d at 1261. We may affirm a grant of summary judgment on any ground presented to the district court and shown by the record, even though the district court did not rely on it. *United States v. Simons,* 129 F.3d 1386, 1389 (10th Cir.1997); *Bolden v. PRC Inc.*, 43 F.3d 545, 548 (10th Cir.1994).

We also review a dismissal under Fed. R.Civ.P. 12(b)(6) de novo, applying the same legal standard used below. *Aguilera v. Kirkpatrick,* 241 F.3d 1286, 1292 (10th Cir.2001); *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). We examine only the complaint, accept all well-pleaded factual allegations as true, and view these allegations in the light most favorable to the plaintiff. *Aguilera,* 241 F.3d at 1292; *Sutton,* 173 F.3d at 1236. Dismissal is proper when it is clear that the plaintiff can prove no set of facts in support of her claim that

would entitle her to relief. *Aguilera,* 241 F.3d at 1292; *Sutton,* 173 F.3d at 1236.

### Discussion

#### A. County Defendants

Appellant contends that the Douglas County Sheriff's Office and Deputy Washburn were not entitled to summary judgment for several reasons. Each asserted reason will be taken up in turn.

■ Appellant first argues that the district court failed to view the facts in the light most favorable to her in finding that the alleged defamatory statement was substantially true. She considers the press release to be false because T.L. did not use the word "consensual" in describing her sexual encounter with Reynolds but the release could be read to say that she did. In appellant's view, a report that T.L. said she consented to sex implies a willingness to participate and a level of sophistication that were untrue. Appellant faults Deputy Washburn for allegedly performing an inadequate investigation and failing to take into account during his interview T.L.'s young age and mental state.

Appellant's argument on this point is ill founded. She focuses on Deputy Washburn and what he knew or should have known from his interview of T.L. Appellant cites no fact, however, showing that Deputy Washburn played any part in deciding to issue the press release or in composing it. To the contrary, the record shows that the Public Information Officer responsible for the press release simply relied on information obtained from investigative reports. (App.126.) Deputy Washburn's report did not contain the language about which appellant complains; he stated, truthfully based on his inquiry, that T.L. "allowed" the sex. The word "consensual" appears in Parker Police Officer Saraff's report. Neither Parker nor Offi-

cer Saraff are parties in this case, and it is unclear that Sergeant Denes had the Saraff report. At the time Deputy Washburn interviewed T.L., however, she was operating under a belief that she had permitted the encounter with Reynolds to occur or, in legal parlance, that she had consented to it.

Further, appellant's argument concerning the meaning conveyed by the statement, "they had what the victim described as 'consensual' sex," takes the phrase out of context. Placing the word "consensual" in quotation marks signifies a particular meaning, as contrasted with the following sentence explaining that the victim in the account could not give legal "consent." This was the reading intended by Sergeant Denes. (App.129.) Accordingly, we agree with the district court that the statement about which appellant complains is substantially true and that this finding defeats appellant's defamation claim. *See Melton v. City of Oklahoma City,* 928 F.2d 920, 929 (10th Cir.1991) (absent duplicity, truthful reports are not actionable under § 1983); *see also Garcia v. City of Albuquerque,* 232 F.3d 760, 772 (10th Cir.2000) (falsity is an element of a liberty interest claim).

Appellant also argues that, aside from the statement's falsity, the press release violated her daughter's right of privacy by exposing to the public intimate information that served no useful purpose. She contends that the question of consent should not have been mentioned because it was unnecessary to the purpose of the release. According to appellant, the stated reason for issuing the release—to alert the public to the danger of internet-related sex crimes involving children—could be served without commenting on whether the sex was consensual. She cites *Doe v. City of New York,* 15 F.3d 264 (2d Cir. 1994), which recognized a § 1983 privacy claim where a city disclosed a person's HIV status in releasing information about a confidential settlement agreement. In response to questions at oral argument, appellant's counsel has clarified the asserted legal theory to be "false light" invasion of privacy, that is, the claim is not that T.L. could be identified from the press release but that it falsely portrayed her as a girl who had consented to sexual relations.

This argument fails for several reasons. First, we are aware of no case, and appellant cites none, recognizing the sort of § 1983 claim asserted here. There exists a constitutional right to privacy in certain forms of personal information possessed by the state if "an individual has a legitimate expectation . . . that it will remain confidential while in the state's possession." *Sheets v. Salt Lake County,* 45 F.3d 1383, 1387 (10th Cir.1995); *see Livsey v. Salt Lake County,* 275 F.3d 952, 955 (10th Cir.2001). "If an individual has a legitimate expectation of confidentiality, then disclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Sheets,* 45 F.3d at 1387; *see Livsey,* 275 F.3d at 955. "It is irrelevant to a constitutional privacy analysis whether these [publicly disclosed] allegations are true or false; '[t]he disclosed information itself must warrant constitutional protection.'" *Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1155 (10th Cir.2001) (quoting *Nilson v. Layton City,* 45 F.3d 369, 372 (10th Cir.1995)) (alteration in *Stidham* ). Simply put, falsity is not an element of an invasion of privacy claim under § 1983.

We have previously stated in other circumstances that a disclosure of information contained in police reports does not implicate a constitutional right of privacy. *Nilson v. Layton City,* 45 F.3d 369, 372

(10th Cir.1995); *see also Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 207 (3d Cir.1991). Appellant does not argue that a different rule should apply to T.L. because she is a minor. In fact, appellant has made no effort to establish that her daughter had a legitimate expectation that the information disclosed would remain confidential. Therefore, because appellant did not meet her burden to show that T.L. had a constitutional right of privacy in the information disclosed, the county defendants were entitled to summary judgment on the § 1983 privacy claim.

Appellant is understandably upset about the sensitive information disclosed in the press release, and one might question Sergeant Denes' judgment in deciding to include this degree of detail. It is not our place, however, on grounds of policy as we might see it to second guess this decision or to gauge the wisdom of the county's practice regarding the content of press releases. Indeed, a countervailing view is that the press release contained useful information for other parents. Including information about consent arguably served a legitimate purpose of emphasizing the danger of internet relationships, which may enable a sexual predator to gain a child's trust and thus obtain consent. Only if appellant had demonstrated the existence of a privacy right, which she has not, would we be asked to weigh T.L's interest in preventing the disclosure against the public interest in releasing the information.

■ Appellant lastly argues concerning summary judgment that the press release violated her daughter's right of association by disclosing information that caused T.L. to be ridiculed and ostracized by peers who falsely perceived her to be sexually promiscuous and immoral. As with invasion of privacy, appellant argues that falsely reporting that her daughter described the sexual encounter as consensual did not further the alleged purpose of the press release but, according to appellant, only served to destroy T.L.'s childhood friendships. Appellant's argument in support of a freedom of association claim is unsupported by relevant legal authority, and therefore we decline to consider it. *Phillips v. Calhoun,* 956 F.2d 949, 953–54 (10th Cir.1992). Moreover, appellant has failed to identify a particular relationship protected by the First Amendment's right of association; the Constitution does not recognize a "generalized right of 'social association.'" *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989).

Therefore, the district court properly entered summary judgment in favor of the county defendants on appellant's § 1983 claims.

### B. *Defendant Reynolds*

■ Appellant asserts that her § 1983 action against Reynolds was wrongly dismissed and that the district court should have exercised supplemental jurisdiction of tort claims against him. We reject appellant's position on the first issue and, accordingly, affirm the district court's exercise of discretion under 28 U.S.C. § 1367(c) not to retain jurisdiction of state law claims.

Reynolds persuasively argues, as the district court found, that the complaint failed to allege that he was a state actor for purposes of suit under § 1983. Appellant relies on paragraphs 42–52 of the complaint to establish that she alleged joint action between Reynolds and the county defendants that " 'substituted the judgment of a private party for that of the police or allowed a private party to exercise state power.'" (Appellant's Opening Br. at 14–15, quoting *Carey v. Continental Airlines Inc.,* 823 F.2d 1402, 1404 (10th

Cir.1987).) A careful review of the cited paragraphs reveals a single sentence that might arguably allege joint action. It states: "This information [in the press release] came from Defendant Washburn and Defendant Reynolds." (App.7, ¶ 42.) Assuming this allegation to be true, it does not provide a basis for a § 1983 suit against Reynolds. A private person does not become involved in joint action with a law enforcement agency simply by furnishing information to officers. *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir.1983). Absent any factual basis for a claim that Reynolds was acting under color of state law, appellant's § 1983 suit against him was properly dismissed.

### *Conclusion*

The judgment entered by the United States District Court for the District of Colorado is AFFIRMED.