**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 2 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LEONISITA QUIOSAY MCELWEE,
also known as Edralin Quiosay,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 01-9508
(BIA No. A39-157-629)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **MURPHY** , **ANDERSON** , and **HARTZ** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Leonisita Quiosay McElwee petitions for review of a decision of the Board of Immigration Appeals (Board) denying her motion to reopen deportation proceedings. We have jurisdiction to review the Board's decision denying a motion to reopen. Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001). Upon consideration, we deny review.

Mrs. McElwee, a native and citizen of the Philippines, entered the United States in December 1984 on an immigrant visa. She had met an American, John McElwee, while they were both working in Saudi Arabia, and they were married in June 1984 in Thailand. She applied for her immigrant visa in October 1984 in the Philippines. On that application, she indicated that she had no children and no husband other than John McElwee. Mr. McElwee died in 1987.

In 1990, Mrs. McElwee filed a petition for naturalization in which she revealed that she had three children in the Philippines. Because she had previously stated that she had no children, the Immigration and Naturalization Service (INS) investigated, determining that Mrs. McElwee had an undissolved marriage in the Philippines and was not free to marry John McElwee. In November 1990, the INS issued Mrs. McElwee an order to show cause why she should not be deported because her immigrant visa was invalid. Mrs. McElwee disputed her deportability and applied for suspension of deportation.

At a 1991 hearing before the immigration judge, the INS produced an authenticated marriage certificate and three authenticated birth certificates, which showed that Leonisita Quiosay married Arsenio Llamera in 1973 and had three children with him.   See Admin. R. at 229-32, 245-47, 257-58.  There was no evidence that the marriage was ever dissolved.

Mrs. McElwee testified to having four children, but claimed that she was never married in the Philippines and her children were not borne of a marriage. See id. at 129-34.  She stated that one of her natural children is probably the result of being raped by Arsenio Llamera,     see id. at 152, but that her other two living children were adopted.     See id. at 133-34.  She said that her fourth child was the product of artificial insemination, but was born prematurely and died. See id. at 138-40.  She asserted that someone must have used her name on the marriage certificate.    Id. at 151-52.

Mrs. McElwee also stated that she had hired a lawyer to investigate the matter in the Philippines, and his July 18, 1991 letter to her attorney, David Calbert, was admitted into evidence.     Id. at 146-47.  In it, the investigator stated that Mr. Llamera could not be located at his home in the Philippines, but that he had married Delia Bastian in 1985 and they had three young children.        Id. at 244. She was at home, but refused to disclose the time and place of her marriage.       Id. The investigator offered his opinion that Mr. Llamera would not have married

Delia Bastian if he was still married to Leonisita Quiosay because he would be tried for bigamy. Id. He also stated that the priest who signed the marriage certificate, by then deceased, "was known to have officiated fake marriages." Id. The immigration judge granted a continuance of several months so that Mrs. McElwee could collect evidence to prove her story. The judge told Mr. Calbert that any documents Mrs. McElwee obtained from the Philippines should be authenticated by an American official there. Id. at 154.

Mrs. McElwee retained attorney Daniel F. Boyle to proceed, but he did not obtain any authenticated documents to refute the INS's case because he did not believe their documents would be given much weight. See id. at 162, 181. At a subsequent hearing before the immigration judge in 1992, Mrs. McElwee repeated her story that she was never married in the Philippines, and provided additional information about past and present health problems, and her lack of connections in the Philippines. Two of her friends also testified to her good character.

Based on all of the evidence, the immigration judge found that the INS's evidence of Mrs. McElwee's marriage in the Philippines was authentic, that she had given false testimony about her marriage and her children, and that she was deportable. Considering her application for suspension of deportation, the judge found that Mrs. McElwee would suffer extreme hardship if deported because of her health problems, but that she was not entitled to suspension of deportation

because she could not meet the requirement to show good moral character after giving false testimony.

Mrs. McElwee hired new counsel and appealed to the Board in 1992, arguing that she had provided sufficient evidence to show that she was never married in the Philippines. With her appeal, she offered an authenticated affidavit from Mr. Llamera, in which he stated that he was never married to her and had faked the marriage certificate. See id. at 77. Mrs. McElwee also offered the opinion of a handwriting expert indicating that it was "highly probable" that it was not her signature on the marriage and birth certificates. See id. at 79-80. The Board construed the appeal to include a motion to reopen the proceedings, but denied relief in 1999 because Mrs. McElwee had not explained why the proof that she was never married in the Philippines was previously unavailable and because her "explanation for the existence of the marriage certificate and the birth certificates [was] inherently implausible and [was] not supported by any reliable evidence." Id. at 43.

Mrs. McElwee hired new counsel and, by stipulation with the government, filed the motion to reopen that is the subject of this petition for review. In it, Mrs. McElwee argued that Mr. Boyle provided ineffective assistance of counsel before the immigration judge by not procuring authenticated documentation to refute the INS's case. The Board denied the motion, noting that it had already

discussed the documentary evidence she had offered with her appeal and she had "offered no new persuasive evidence." Id. at 2. The Board also relied in part on Mr. Boyle's opinion that Mrs. McElwee was not credible. Id. The Board further concluded that Mrs. McElwee lacked seven years of continuous presence in this country and was therefore ineligible for suspension of deportation. Id. at 2-3.

In her petition for review to this court, Mrs. McElwee does not dispute the Board's conclusion that she is ineligible for suspension of deportation as a matter of law due to lack of residency, regardless of good moral character. Even if the issue is not deemed waived, we must affirm the Board's decision on this point. To qualify for suspension of deportation, an alien must establish seven years of continuous physical presence in the United States, good moral character, and that either the alien or a citizen member of the alien's family would suffer extreme hardship if the alien were deported. INS v. Phinpathya, 464 U.S. 183, 189 (1984) (citing 8 U.S.C. § 1254(a)(1)). Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), an alien's time of residence ceases to accrue when an order to show cause is issued. Sibanda v. INS, 282 F.3d 1330, 1332-33 (10th Cir. 2002). This "stop-time" provision applies to all orders to show cause, even those issued before IIRIRA was passed. Id. at 1333-34. Mrs. McElwee entered this country in December 1984. The INS issued her an order to show cause why she should not be deported in November 1990. Thus,

under IIRIRA, she cannot establish seven years of continuous presence in the United States and is not eligible for suspension of deportation as a matter of law.

Nevertheless, Mrs. McElwee argues that the Board should have reopened the deportation proceeding because: (1) it did not mention that her attorney, Mr. Boyle, was disbarred sometime after he represented Mrs. McElwee and it improperly relied on his opinion that she was not credible; (2) the INS did not oppose her second motion to reopen; and (3) Mr. Boyle provided ineffective assistance before the immigration judge.

We review the Board's decision denying a motion to reopen for abuse of discretion. See Becerra-Jimenez v. INS, 829 F.2d 996, 1002 (10th Cir. 1987). Under this standard, we will reverse a decision of the Board only where the Board has acted "arbitrarily, irrationally, or contrary to law." Id. The Board has not acted arbitrarily or irrationally if it "consider[ed] the issues raised" and "announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Id. at 1000 (quotation omitted). The Board "has no duty to write an exegesis on every contention." Id. (quotation omitted). We determine de novo whether the Board has acted contrary to law. Nguyen v. INS, 53 F.3d 310, 311 (10th Cir. 1995).

There is no merit to Mrs. McElwee's first two contentions of error. As noted above, the Board was not required to discuss every detail of her argument.

It is sufficient that the Board identified the backbone of her motion to reopen–her claim of ineffective assistance of counsel–and explained its dismissal of that claim as based, at least in part, on her failure to offer "new persuasive evidence." Admin. R. at 2.

Mrs. McElwee's claim of ineffective assistance of counsel is also unavailing. There is no Sixth Amendment right to counsel in civil deportation proceedings. Michelson v. INS, 897 F.2d 465, 467 (10th Cir. 1990). An alien is entitled to due process, however, and a claim of ineffective assistance of counsel in civil immigration proceedings may be based only on Fifth Amendment due process. Id. at 468. To prove that claim, an alien must show that her counsel's ineffective assistance so prejudiced her that the proceeding was fundamentally unfair. Id. at 468.

Under the Fifth Amendment standard, Mrs. McElwee cannot show that her attorney's failure to procure the documentary evidence she later offered with her appeal to the Board rendered her deportation proceeding fundamentally unfair. First, Mrs. McElwee cannot show that Mr. Boyle's performance was ineffective for not procuring an affidavit from her alleged husband, Mr. Llamera. An investigator she hired while this case was still in front of the immigration judge could not find Mr. Llamera at his home in the Philippines. See Admin. R. at 115-16, 244. Mrs. McElwee has neither argued nor demonstrated that

-8-

Mr. Llamera was available to provide Mr. Boyle with an affidavit. In addition, Mrs. McElwee cannot demonstrate that Mr. Boyle's failure to obtain a handwriting expert's opinion prejudiced her. The immigration judge rejected petitioner's explanation that Mr. Llamera had forged all the marriage and birth certificates as "absolutely incredible," since they appeared to him to be authentic and signed by the same person, and because petitioner had already admitted that she had lied to the U.S. Consul about her children. See id. at 117. All the handwriting expert's opinion could do is provide partial support for an argument the judge did not accept at all. The judge wanted Mrs. McElwee to produce "objective corroborating evidence" to support her claim that the government's documents were forged. Id. But, as stated, Mr. Llamera could not be located when her first attorney looked for him. In addition, even when Mr. Llamera was found, he never admitted that he forged the birth certificates; he only claimed to have forged the marriage certificate. See id. at 77. The immigration judge believed that the signatures on all the documents looked like they were made by the same person and that they appeared to be Mrs. McElwee's signature. See id. at 117. As a result, she cannot show that the proceeding was fundamentally unfair because she cannot demonstrate that there is any credible evidence that her attorney could have obtained for the immigration judge's consideration. Therefore, the Board did not abuse its discretion in denying her motion to reopen.

The petition for review is denied.

Entered for the Court

Stephen H. Anderson
Circuit Judge