**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

EDWARD G. MARQUEZ,

      Plaintiff - Appellant,

v.

BAKER PROCESS, INC.,

      Defendant - Appellee.

No. 01-4019
(D.C. No. 2:99-CV-738-B)
(D. Utah)

ORDER AND JUDGMENT   *

Before **EBEL** , **HOLLOWAY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Plaintiff-appellant Edward G. Marquez brought this employment

discrimination action against his former employer, Baker Process, Inc. (Baker).

---

*        This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff alleged discrimination based on his Hispanic national origin and retaliation for a previous discrimination complaint. The district court entered summary judgment for Baker and plaintiff appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Background

Plaintiff was hired as a parts mover for Baker on May 12, 1997. On January 13, 1999, plaintiff filed a complaint with the Utah Anti-Discrimination Division (UADD) and the Equal Employment Opportunity Commission (EEOC) alleging Baker continuously denied him requested overtime because he was of Hispanic origin. In a general intake questionnaire filed with the UADD, Plaintiff explained that he believed the overtime issue arose after he filed a grievance with his local union representative complaining that Baker prohibited Plaintiff from speaking Spanish while at work. That language claim is now Plaintiff's primary claim of disparate treatment. [1]

During the time his discrimination charge was under review, Plaintiff reported that he received good work reviews and that he ultimately put in a bid for a better job in a different department. He was told that he received that position sometime in June of 1999. Plaintiff received the EEOC's right-to-sue

---

[1] In his brief on appeal, Plaintiff has specifically dropped his allegation of discrimination based on Baker's decisions to disallow overtime.

-2-

letter on June 25, 1999, and claims he was told soon after that letter was released that the new job would be rebid.

On July 1, 1999, Plaintiff was summoned to the office of his immediate supervisor, George Parkinson, I App. 64-65, where he was confronted by Parkinson and Parkinson's boss, Dave Whittle. Plaintiff was accompanied by his union representative. Plaintiff claims that at this meeting, Whittle "started saying I said some very bad things about the company and that *I had presented a discrimination complaint against the company and that Baker [] didn't like my attitude and that I no longer worked for Baker [].* " I App. at 65 (emphasis added); see also *id.* at 106-07. Baker representatives dispute these allegations, arguing that Plaintiff had made a disparaging comment to a visitor to the plant while the visitor was with Plaintiff's supervisor. Baker claims that Plaintiff's statements, coupled with his belligerent attitude, caused Whittle to place Plaintiff on a three-day suspension. According to Baker, Whittle told Plaintiff to return to work on July 7, 1999, for a disciplinary meeting with management and the union. Plaintiff never returned to work, and instead filed a second charge of discrimination with the UADD and EEOC alleging retaliation based on his belief that he was terminated for engaging in protected EEO activity.

Plaintiff filed suit in federal district court alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

through 2000e-17, and also a state claim for intentional infliction of emotional distress. Plaintiff apparently did no discovery after filing his complaint, and at the summary judgment phase he relied entirely on his own testimony from his deposition to survive the motion. The court granted summary judgment for Baker on all counts; however, Plaintiff has only appealed dismissal of his Title VII claims.

## II. Standard of Review

"We review the grant of summary judgment de novo, applying the same standard as did the district court." *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence that would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986). Accordingly, summary judgment is appropriate against any party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Retaliation Claim

Plaintiff claims that as a result of his earlier EEO activity, Baker terminated his employment. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000). Once Plaintiff makes a prima facie showing, Baker must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). [2] Plaintiff must then respond by showing Baker's asserted reasons for the adverse action were not its true reasons, but were a pretext for discrimination. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). Baker does not dispute that

---

[2] While the elements required to establish a prima facie case of retaliation differ slightly from those of a claim of disparate treatment under Title VII, the analytical framework of *McDonnell Douglas* guides our review of both. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). In the instant case, Plaintiff relies on testimony, discussed *infra*, which would qualify as direct evidence of retaliatory intent. Plaintiff focuses his argument on the indirect method of proof, however, mentioning direct evidence only once in his brief. We have analyzed the case as Plaintiff has presented it, relying on the *McDonnell Douglas* framework.

Plaintiff engaged in a protected activity when he filed his initial complaint with the EEOC and UADD on January 13, 1999.

Relying on testimony of those at the disciplinary meeting, including testimony from Plaintiff himself, the district court found that Plaintiff did not suffer an adverse employment action as he was not terminated as a result of his statements, but merely suspended. I App. at 6. We have held, however, that "[a]ctions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn." *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). Moreover, because this circuit liberally defines the phrase "adverse employment action," *see Anderson*, 181 F.3d at 1178, we feel that Baker's rescission of Plaintiff's new position was also an adverse employment action. Therefore, we conclude that Plaintiff did meet his burden as to the second element of his prima facie case.

In addition to demonstrating a protected activity followed by an adverse employment action, to survive a motion for summary judgment a plaintiff must also show a causal connection between the protected activity and that action. "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting *Burrus v. United Tel. of Kans. Inc*., 683 F.2d 339, 343 (10th

Cir. 1982)). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal,* 237 F.3d at 1253.

Plaintiff argues that Baker's action on July 1, 1999, whether disciplinary or otherwise, was so close to the issuance of the EEOC's right-to-sue letter that the temporal proximity itself justifies an inference of retaliatory motive. We disagree. The EEOC's issuance of a plaintiff's right-to-sue letter, by itself, is not a protected activity of the employee under 42 U.S.C. § 2000e-3(a). *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (stating that the argument that an EEOC right-to-sue letter is a protected activity under Title VII is "utterly implausible"). Moreover, in *Breeden*, the Court rejected the argument that the letter provided the employer with its first notice of the charge of discrimination, thus allowing the inference that the adverse employment action following issuance of the letter was in fact a reaction to the original charge. *See id.* Therefore, we review Plaintiff's retaliation claim based on his protected activity of filing a formal charge of discrimination on January 13, 1999. *See Anderson*, 181 F.3d at 1178.

"We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish

causation." *O'Neal*, 237 F.3d at 1253 (quoting *Anderson*, 181 F.3d at 1179).

Here the actions of which Plaintiff complains occurred more than five months after his discrimination charge was filed. However this temporal proximity was not relied on alone by Plaintiff as he has also offered other evidence of retaliatory motive. In addition to Plaintiff's testimony that his superior Whittle knew of, and criticized him for, his formal discrimination complaint during the disciplinary meeting on July 1, 1999, Plaintiff also claims that the qualifications for the job offer that Baker rescinded were changed, and that the job was subsequently offered to a white woman. Finally, Plaintiff argues that the timing of all of these events taken together raise the inference of retaliatory motive.

Discussing a plaintiff's burden to present a prima facie case in the context of a claim of disparate treatment, the Supreme Court has explained that,

> the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the Plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the Plaintiff because no issue of fact remains in the case.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (footnote omitted). This language is equally fitting to a claim of discriminatory retaliation. Just as a plaintiff's burden to demonstrate a prima facie case is "not onerous" in

the context of a claim of disparate treatment, *see id.* at 253, it is no more so in the context of a claim of retaliation.

We hold the additional evidence offered by Plaintiff in this case, combined with the proximity between Plaintiff's protected activity and the adverse employment actions, is sufficient to raise an inference of discrimination such that Plaintiff has established his prima facie case of discriminatory retaliation.

Under *McDonnell Douglas*, after a prima facie case of retaliation is established by the plaintiff, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Perry*, 199 F.3d at 1135. In determining whether a particular defendant has met its burden of coming forward with facially legitimate, nondiscriminatory reasons for the employment actions, this court has stated:

> [t]he defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear.

*EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations and footnote omitted). If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment "only if [he] is able to show that a genuine

dispute of material fact exists as to whether the defendant's articulated reason was pretextual." *Perry*, 199 F.3d at 1135.

In this case, Baker proffered reasons for its decision to suspend Plaintiff. Relying on the testimony of other participants from the disciplinary meeting, including the affidavit of Plaintiff's union representative, Baker claims that the meeting was called solely to discuss Plaintiff's insubordinate statements made to a plant visitor, and that no mention was made concerning Plaintiff's prior EEO activity. Baker also claims that Plaintiff was ultimately terminated after he had missed several days of work following his suspension, and after he had declined to attend two meetings scheduled by his union representative. Finally, Baker argues that after Plaintiff had been awarded his new position, Baker realized that the job had been improperly classified. Baker claims that it was willing to allow Plaintiff to rebid, but that Plaintiff had already made his decision not to return to work.

Given these facially legitimate reasons for Baker's employment actions, to survive summary judgment Plaintiff was required to present conflicting facts to create a genuine issue as to whether these reasons are not the true reasons for the employment decisions, but rather a pretext for discrimination. To establish pretext, a plaintiff must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is

-10-

unworthy of credence . . . ." *Burdine*, 450 U.S. at 256. Plaintiff could accomplish this by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation and citation omitted). However, mere allegations alone are insufficient, *see id.* at 1324, and "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

We have noted that pretext may be established in a variety of ways. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Reading the record in the light most favorable to Plaintiff as the party opposing summary judgment, *Anderson*, 477 U.S. at 249-52, we are convinced that Plaintiff sufficiently met his burden to survive the motion. We are persuaded that Plaintiff has shown the existence of a genuine issue that a discriminatory reason more likely motivated Baker, or that Baker's proffered explanation of events was unworthy of credence. In his deposition Plaintiff testified about the July 1, 1999 meeting to which he was called at the behest of Mr. Dave Whittle, the boss of George Parkinson, the supervisor of Plaintiff. I App. at 64-65. Plaintiff testified that

-11-

> Dave Whittle was 'the big boss.' And he started saying I said some very bad things about the company and that I had presented a discrimination complaint against the company and that Baker [] did not like my attitude and that I no longer worked for Baker []. And that's all, and they told me to leave.

*Id*. at 65. Plaintiff said that some four or five days later he heard he was really only on a three-day suspension. Plaintiff was asked whether he was told to come to work to discuss his suspension, and he testified:

> [t]hey told me I was no longer on the payroll. They did not tell me to come back to work. They just said to come back because there was going to be a meeting. They said I was not on the payroll. They were not paying me and I was obviously fired.

*Id.* at 68. Plaintiff testified that Whittle had told him he was not on the payroll the same day they fired him, July 1, 1999. *Id.*

Baker strenuously argues that opposing evidence contested the testimony of Marquez. Such contradictory evidence does not, nevertheless, show entitlement to summary judgment. The Plaintiff's own testimony may, by showing a genuine question of fact as to a material issue, be sufficient to survive summary judgment. *See Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1257-59 (10th Cir. 2001) (even where plaintiff's affidavit allegedly was contradictory to her previous deposition testimony, court was unwilling to say that the affidavit was insufficient to preclude summary judgment on the point in question; summary judgment for

-12-

defendant employer affirmed on other grounds). [3] Accordingly, we are satisfied

that summary judgment on the retaliation claim was error on this record.

## IV. The Discrimination Claim

Plaintiff Marquez also claims he was discriminated against because Baker

forbade him from speaking in his cultural language, Spanish, in the work place.

The original charge of discrimination by Plaintiff was asserted before the UADD

and the EEOC. Plaintiff there alleged that he was "told . . . not to speak my

cultur[al] language" on February 2, 1998. I App. at 11. In his deposition,

however, Plaintiff gave a more specific statement of this discrimination claim.

He said that he was told the first time by Mr. Scott Kay that "he didn't want me to

use my language, and then he changed it and said he didn't want me to use that

---

[3]       In *Franks v. Nimmo*, 796 F.2d 1230, 1236-38 (10th Cir. 1986), we held that
the plaintiff's affidavit could be ignored in consideration of the defendants'
motion for summary judgment because the affidavit constituted an attempt to
create a "sham fact issue." The opinion set out factors for the courts to consider
in determining whether an affidavit contradicting previous deposition testimony
should be considered or ignored. Clearly implicit in *Selenke* and other cases
following or distinguishing *Franks* is the principle that a party's testimony by
itself *may* be sufficient to preclude summary judgment, *even when the party has
also given contradictory testimony*.
        Of course, in the instant case, Plaintiff's testimony was not contradicted by
any other statements *by him about the conduct on July 1, 1999 when Plaintiff was
fired or suspended.* We think it clear, then, that Plaintiff's own testimony was
sufficient to avoid summary judgment. *See Leslie v. Grupo ICA*, 198 F.3d 1153,
1158 (9th Cir. 1999) (if direct evidence produced by the moving party conflicts
with direct evidence produced by the nonmoving party, the judge must assume the
truth of the evidence set forth by the nonmoving party with respect to that fact).

word." I App. at 78. Plaintiff was asked about the word "panocha," and he confirmed that it was his nickname, and that the word stood for "brown sugar." *Id* at 79. Then Plaintiff was asked about the understanding of the meaning of the word "panocha," and he further confirmed that one of the women in his work place believed it was slang for "pussy." Plaintiff was asked whether this understanding about the meaning of "panocha" was why the company asked him to stop using the word. Plaintiff responded "Yes." *Id.* at 79. Later Plaintiff confirmed that Mr. Kay had said he could use the word on the floor, but not on the radio. When asked if this was what Mr. Kay told him, Plaintiff replied: "Yes, it was." *Id.* at 80.

We are satisfied that the company had a proper and legitimate basis for directing that Plaintiff not use the word which was understood as profanity. The regulations of the EEOC recognize that a rule requiring employees to speak only English is a burdensome term and condition of employment. 29 C.F.R. § 1606.7 (a). Nevertheless, the regulations also provide an employer may have a rule limiting language used if it is "justified by business necessity." 29 C.F.R. § 1606.7 (b), which we believe was shown here. Thus the grant of summary judgment as to this claim of discrimination based on the direction concerning the word used by Plaintiff on the radio communication system was correct, and we uphold that ruling.

## V. Conclusion

Accordingly we **REVERSE** the grant of summary judgment as to the retaliation claim of Plaintiff Marquez and **REMAND** that claim for further proceedings. We **AFFIRM** the grant of summary judgment with respect to the discrimination claim based on the company's direction to cease use of the profane word. We **DENY** the motion of Baker for sanctions and costs.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

-15-