Matthew Jay **MURPHREE**, Plaintiff,

v.

**US BANK OF UTAH, N.A., and Julie Reynolds, Defendants.**

**No. 2:99CV742DAK.**

United States District Court,
D. Utah,
Central Division.

June 26, 2003.

Bel–Ami J. de Montreux, Salt Lake City, UT, for Matthew Jay Murphee, plaintiff.

John A. Snow, Van Cott Bagley Cornwall & McCarthy, Charles P. Sampson, Bret S. Hayman, Suitter Axland, Salt Lake City, UT, H. Michael Drake, Morinda Legal Department, Provo, for US Bank of Utah, N.A., Julie Reynolds, defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

On July 15, 2002, this court received the mandate from the Tenth Circuit Court of Appeals in the above-captioned matter. In its opinion, the Tenth Circuit affirmed in part and reversed in part this court's March 19, 2001 Order, which dismissed all of Plaintiff's claims. Specifically, the Tenth Circuit affirmed this court's dismissal of Plaintiff's claims for malicious prosecution, failure to supervise, false imprisonment, and intentional infliction of emotional distress, but it reversed this court's dismissal of Plaintiff's slander claim based on the Utah Supreme Court's determination that "[i]f one publishes a statement characterizing another as a thief, the statement is libelous per se." *Murphree v. US Bank Of Utah*, 293 F.3d 1220, 1222 (10th Cir.2002) (quoting *Western States Title Ins. Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316, 318 (1966)). The Tenth Circuit noted that it was unclear from the record whether this court had considered the issue of qualified immunity pertaining to a false report of criminal conduct to the police. *Id.* at 1223.

Accordingly, the Tenth Circuit remanded Plaintiff's slander claim to this court for further consideration, specifically instructing this court to "first determine whether qualified immunity should apply in this case. If the district court determines that qualified immunity is implicated, Appellant must then present some evidence of malice on the part of the bank or its employee in contacting the police regarding Appellant's conduct to avoid summary judgment." *Id.*

Pursuant to the Tenth Circuit's decision, this court requested and received further briefing from the parties regarding whether qualified immunity should apply in this case, and, if so, whether Plaintiff has any evidence of malice on the part of Defendants in contacting the police. The court has now carefully considered the Tenth Circuit's decision, along with the memoranda and other materials submitted by the parties. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

On July 16, 1999, Matthew Murphree ("Murphree") entered the U.S. Bank branch in West Jordan, Utah to open a checking account. At that time, Murphree was an employee of Hartford Financial Services ("Hartford"), and was the company's sole Utah employee. Although he was a resident of California, he had been assigned to Utah to develop the company's marketing in the western and central states. He had recently moved to Utah and was living with a friend.

Murphree had a legal payroll check in his possession, bearing the address and telephone number of Hartford. He sought to deposit the entire amount of the check. Murphree approached the new accounts desk and spoke with Julie Reynolds ("Reynolds"), a U.S. Bank employee. He obtained an account application from her. Along with this application, he gave his birth certificate, California driver's license, and two credit cards to Reynolds. He provided Reynolds with Hartford's Utah telephone number, which was Murphree's cellular telephone number. He customarily answered his cellular phone, "Matt Murphree of Hartford Financial" or "Matt at Hartford." He also provided Reynolds with Hartford's branch number in Skokie, Illinois and told her that the telephone number was also on his payroll check. In addition, he provided a corporate "877" toll-free number.

After receiving the completed application from Murphree, Reynolds left the desk where Mr. Murphree was seated and took his application and driver's license to a room at the back of the bank, where she stayed for an extended period. While waiting for Reynolds to return, Murphree made and received several business-related telephone calls on his cellular phone. Nobody called to ask whether Murphree worked for Hartford, although a female voice called and asked, "Is Matt there?" or "Where is Matt?" to which Murphree responded, "This is he." The caller immediately hung up.

While Murphree was waiting for Reynolds to return, Murphree asked the bank manager, Scott D. Scharman, why it was taking so long. The manager then either made or received a telephone call and said that "we need to take care of these things with these out-of-state Jews" and looked directly at Murphree.[1]

While in the back of the bank, Reynolds then called 911. She reported that she was an employee of the bank, and that she had a possible forgery.[2] The 911 dispatcher asked, "With a fake I.D.?" to which Reynolds responded, "He has a California I.D." The dispatcher asked, "Is it fake? Do you think it's fake?" Reynolds replied, "Well, it looks good." Reynolds then giggled.[3]

Approximately five to seven minutes after the manager had made the remark about "out-of-state Jews," the police arrived at the bank. Murphree turned to see what was happening. Five officers entered through two bank doors, and four of them approached Murphree. The officers then searched him for weapons. During the weapons search, the officers dis-

---

**1.** Defendants did not cite any evidence disputing this alleged statement, but they argue in their reply memorandum that such a statement was not made by bank personnel.

**2.** Defendants claim, without citing any evidence, that Reynolds made the call because she thought "it was strange that the number Mr. Murphree provided for his work was his personal cell phone number." Defs.' Mem. Regarding Applicability of Qualified Immunity at 4.

**3.** A newsclip containing a portion of the 911 call from Reynolds was included as an Exhibit to Plaintiff's Mem. in Opp'n to Summary Judgment.

covered a marijuana pipe in his pocket, and then they handcuffed him for 10 to 15 minutes, during which time Murphree did not know that he had been accused of committing a forgery. The police then determined that the forgery complaint was unfounded.

## II. DISCUSSION

■ As the Tenth Circuit noted when the instant case was on appeal, "an individual reporting suspected criminal conduct to police authorities is entitled to qualified immunity for erroneous statements made to police officials." *Murphree v. US Bank Of Utah,* 293 F.3d 1220, 1222 (10th Cir. 2002). While the Tenth Circuit noted that it could not find any Utah law directly on point, it stated that "this qualified immunity is well established in both federal and state courts across the country." *Id.* (citing cases); *see also Fridovich v. Fridovich,* 598 So.2d 65, 67–68 (Fla.1992) (citing cases and stating that "it appears that a majority of states that have addressed this issue have embraced a qualified privilege."). Yet, "the immunity afforded a citizen reporting suspected criminal conduct to the police is qualified. Once a

defendant raises this immunity, the burden shifts to the plaintiff to show that the defendant's report of conduct was the product of malice or ill will." *Id.* at 1223.

Based on the Tenth Circuit's decision in *Murphree,* the parties do not dispute and the court agrees that the doctrine of qualified immunity is implicated in this case.[4] Thus, the question remaining for this court is whether Plaintiff has set forth any evidence of malice that would create a genuine issue of fact and thus preclude summary judgment. *See id.*

■ In its decision, the Tenth Circuit recognized that, to defeat summary judgment, Murphree must offer some evidence of malice on the part of the Bank or its employee in contacting the police regarding Murphree's conduct. *Id.* Utah courts have defined common law malice as "ill will or spite." *See, e.g., Cox v. Hatch,* 761 P.2d 556, 560 n. 3 (Utah 1988). In addition, in *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 904–05 (Utah 1992), the Utah Supreme Court recognized that common law malice is demonstrated by statements that "were made with ill will, were excessively published, or the defendant did not

---

4. The Tenth Circuit appears to have ruled that "an individual reporting suspected criminal conduct to police authorities is entitled to qualified immunity for erroneous statements made to police officials." *Murphree,* 293 F.3d at 1222. Yet, it requests that this court determine whether qualified immunity is implicated in this case, and, if so, whether Plaintiff has set forth any evidence of malice to avoid summary judgment. Thus, it is unclear whether the Tenth Circuit intended for this court to apply the Tenth Circuit's ruling on the issue or make an independent decision regarding whether Utah courts would recognize a qualified privilege in this situation. Because the parties do not take issue with the Tenth Circuit's ruling and because it appears that this court is bound by the ruling in any event, the court has applied that ruling. However, to the extent the Tenth Circuit intended for this court to independently analyze

whether Utah courts would recognize such a privilege, this court finds that they would in light of the vast majority of jurisdictions that have recognized the privilege, *see Fridovich v. Fridovich,* 598 So.2d 65, 67–68 (Fla.1992), and also in light of the Utah Supreme Court's previous recognition of a conditional privilege where important interests justified some latitude for making mistakes. *See, e.g., Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 58 (Utah 1991) (finding that "[t]he publication of a defamatory statement is conditionally or qualifiedly privileged in certain situations in which a defendant seeks to vindicate or further an interest 'regarded as being sufficiently important to justify some latitude for making mistakes.'") (quoting W. Keeton, *Prosser & Keeton on the Law of Torts,* § 115, at 825 (5th ed.1984)); *see also* Utah Code Ann. § 45–2–3(3) (1998).

reasonably believe his or her statements were true." *Id.* at 905; *see also id.* at 904 ("Under the common law standard of malice, to overcome a conditional privilege, a plaintiff must show an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive.") (internal quotations omitted).

■ "Whether the evidence in a defamation case is sufficient to support a finding of malice is a question of law." *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 905 (Utah 1992); *Cf. Brehany,* 812 P.2d at 58 (stating that whether a publication is conditionally privileged is a question of law to be determined by the trial court, unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended or the defendant acted with malice).

■ In the instant case, Murphree testified that Reynolds had been gone for an extended period of time with his application and that when Murphree asked the bank manager about the delay, the bank manager either received or made a telephone call, during which he made an anti-Semitic comment and looked directly at Murphree. Around that time, Reynolds then called 911 to report a possible forgery, although she laughed after stating that the driver's license "looks good."

■ Defendants argue that Murphree has failed in his burden because, according to Defendants, he has made only unsupported allegations regarding malice. De-

fendants claim that he has no facts or witnesses to support his allegations. Rather, they claim, he makes bare, self-serving allegations, which are insufficient as a matter of law because such statements amount to accusations, not evidence. Defendants, however, have not supported with any legal authority their argument that a nonmoving party's own testimony cannot be considered evidence to defeat summary judgment in this situation, and their position is not correct in this instance. It is well established that a nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion.[5] *See, e.g., Selenke v. Medical Imaging of Colo.,* 248 F.3d 1249, 1257–59 (10th Cir.2001) (allowing plaintiff's affidavit testimony to create a genuine issue of fact even where plaintiff had not so testified in her deposition); *Marquez v. Baker Process, Inc.,* 42 Fed.Appx. 272, 278, 2002 WL 1425201, *5 (10th Cir.2002) (unpublished); *Fierros v. Texas Dep't of Health,* 274 F.3d 187, 195 (5th Cir.2001); *Dockins v. Benchmark Communications,* 176 F.3d 745, 752–53 (4th Cir.1999); *Wohl v. Spectrum Manuf., Inc.,* 94 F.3d 353, 358 (7th Cir.1996).

In light of the manager's alleged comment about "out-of-state Jews," which was made while looking at Murphree, coupled with Reynold's laughter during her 911 call, which corresponded in time to the manager's comment, this court cannot make the factual determination that Defendants did not act with malice. Whether Defendants acted with malice is a determi-

---

5. The court recognizes that there are situations in which the assertions contained in a nonmoving party's affidavit or deposition would not defeat a motion for summary judgment. *See, e.g., Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526 (10th Cir.1994) (finding that plaintiff's evidence regarding defendant's alleged pretext for discrimination did not create a reasonable inference that the employer's proffered explanation was unworthy of credence, and thus did not defeat summary judgment). However, the situation is different in the instant case, as Plaintiff's evidence constitutes more than mere subjective allegations and rises to the level of supporting an inference that Defendants acted with malice.

nation for a jury to make after hearing the evidence and assessing the credibility of those who testify. For this court to make such a finding would invade the province of the jury and constitute reversible error.

In addition, Defendants claim that "[t]he only way this immunity can be defeated is for a plaintiff to *prove* that the reporting party reported the activity with malicious intent, i.e., to harass or embarrass the plaintiff." Defs.' Reply Mem. Regarding Applicability of Qualified Immunity at 4 (emphasis added). Again, Defendants are incorrect because Plaintiff need not "prove" malicious intent at this juncture; rather, Plaintiff need only proffer evidence that would be sufficient to support a jury's finding of malice.

Defendants also assert, with no citation to authority, that Plaintiff has failed in his burden because he must present some evidence that "U.S. Bank called the police because (1) U.S. Bank discriminates against Jewish individuals, (2) U.S. Bank thought he was Jewish, and (3) U.S. Bank wished to embarrass and humiliate him because U.S. Bank personnel believed Mr. Murphree to be of the Jewish faith." *Id.* at 5. To the contrary, Murphree need only create a triable issue regarding whether Defendants acted with malice, and Murphree has done so.

In conclusion, the court finds that Plaintiff's evidence is sufficient to support a finding of malice, and thus, this court cannot determine as a matter of law that Defendants are entitled to qualified immunity. Rather, it is for a jury to determine whether Defendants' report to the police was made with common law malice.

## III. CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment on Plaintiff's slander claim is DENIED. The parties are directed to contact the court to set a trial date for this matter.