**Taj BECKER, M.D., Plaintiff,**

v.

**J. Denis KROLL, in his individual, official and representative capacity; Jeff Wright, in his individual, official and representative capacity; Terry Allen, Ph.D., in his individual, official and representative capacity; Gordon Van Ballegoie, in his individual, official and representative capacity; Michelle Hebert, in her individual, official and representative capacity; Gale R. Evans, in his individual, official and representative capacity; Mark Shurtleff, in his individual, official and representative capacity; David Gardner, in his individual, official and representative capacity; John Does 1–20, in their individual, official and representative capacities, Defendants.**

No. 2:02–CV–00024 DAK.

United States District Court, D. Utah, Central Division.

Oct. 19, 2004.

Robert R Wallace, Esq., Kirton & McConkie, Salt Lake City, UT, for Plaintiff.

Jennifer L. Falk, Esq., Clawson & Falk LLC, Alain C. Balmanno, Esq., Utah Attorney General's Office, Litigation Unit, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on (1) Motion for Summary Judgment As to All Claims Against Defendants Michelle Hebert Snow, Gordon Vanballegooie and Dr. Terry Allen; (2) Defendants Evans and Gardner's Motion for Summary Judgment; (3) Motion for Summary Judgment As to All Claims against Defendants J. Denis Kroll and Jeff Wright; and (4) Motion to Strike Affidavit of Taj Becker. A hearing on the motions was held on August 12, 2004. At the hearing, defendants Michelle Hebert Snow,[1] Gordon Vanballegooie, Dr. Terry Allen, J. Denis Kroll, and Jeff Wright were represented by Jennifer L. Falk of Clawson & Falk, LLC. Defendants Gale Evans and David Gardner were represented by Alain C. Balmanno of the Utah Attorney General's Office. Plaintiff Taj Becker was represented by Robert R. Wallace of Kirton & McConkie. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate if the record before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly pre-clude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to a 'lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Sports Unlimited, Inc. v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir.2002) (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998)). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. The court will "view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment." *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1440 (10th Cir.1996).

### B. Background

This is a 42 U.S.C. § 1983 and state law action in which the plaintiff, Taj Becker, M.D., alleges she was wrongfully investigated and prosecuted by members of Utah's Medicaid Fraud Control Unit ("MFCU"). There are nine causes of action in plaintiff's Third Amended Complaint: (1) Denial of Due Process; (2) Extortion/Bribery; (3) Retaliation for speaking out on a matter of public concern; (4) Libel; (5) Malicious Prosecution; (6) Declaratory Judgment; (7) Injunction; (8) Conspiracy; and (9) Substantive Due Process Violation. Defendants have moved for summary judgment as to all claims.

Dr. Becker is a board-certified neurologist practicing medicine in St. George,

---

**1.** Michelle Hebert Snow's last name was "Hebert" during the time period relevant to this lawsuit, but she has since married and taken the last name "Snow."

Utah. She was criminally investigated and prosecuted by MFCU for "upcoding"—the practice of improperly billing Medicaid for a more expensive service than was actually provided to the patient. Dr. Becker has sued several members of Utah's Medicaid Fraud Control Unit who she alleges participated in her wrongful investigation and prosecution.

On the morning of November 17, 1998, Sergeant Jeff Wright, the chief investigator for MFCU, arrived unannounced at Dr. Becker's office and demanded that she produce certain medical records for copying. Sgt. Wright informed Dr. Becker that since she had signed a provider agreement with Medicaid that he had a right to the records, but that in addition to the agreement, he also had a subpoena. Dr. Becker informed Sgt. Wright that she would only produce the records pursuant to a subpoena. Sgt. Wright then handed Dr. Becker what appeared to be a valid subpoena. After reviewing the subpoena, Dr. Becker instructed her staff to produce the records immediately rather than having to appear in Salt Lake City at a later date. Sgt. Wright and others from MFCU removed and copied dozens of patient records from Dr. Becker's office. The records were returned to Dr. Becker's office later that day.

Dr. Becker was then asked to come to Salt Lake City to meet with J. Denis Kroll-chief prosecutor for MFCU. Dr. Becker traveled to Salt Lake City and met with Mr. Kroll, Sgt. Wright, and Ms. Hebert. According to Dr. Becker, she was told that if she did not pay $107,000 to the MFCU within two weeks, she would be criminally prosecuted. In his own words, Mr. Kroll testified that he informed Dr. Becker of the "parade of horrors" and "how bad it could get" if MFCU filed criminal charges.

In April 1999, Mr. Kroll offered to waive any criminal prosecution if Dr. Becker would pay $49,605. Mr. Kroll also provided Dr. Becker with a draft of a criminal complaint against her seeking $646,000 in damages. Then, on or about June 24, 1999, Mr. Kroll filed a civil suit against Dr. Becker, asking for $25,000 plus fines and investigative costs. He dismissed the same case on or about July 7, 1999. On or about November 11, 1999, Plaintiff filed her first Notice of Claim. In part because of political pressure from plaintiff and others, the state decided at the end of 1999 to transfer oversight of MFCU from the Utah Department of Public Safety to the Attorney General's Office. David Gardner then took over Mr. Kroll's position as the lead prosecutor for MFCU. Mr. Kroll became the interim director of MFCU.

Dr. Becker and her husband asserted considerable political pressure on MFCU through testimony before legislative committees and letters to senators, the Governor, the Attorney General, media, and others. On or about January 11, 2000, a criminal complaint was filed against Dr. Becker on the same day Dr. Becker's husband, A. Fred Becker, was testifying before a state legislative committee about MFCU's alleged prosecutorial abuses. Sgt. Wright did not make the decision as to whether or not to prosecute Dr. Becker, but he did sign the information and affidavit used to charge Dr. Becker. Shortly after the criminal charges were filed, Sgt. Wright was transferred out of MFCU to a different department although he later testified at Dr. Becker's preliminary hearing.

At the preliminary hearing, only the prosecution presented evidence. Prior to the defense presenting any evidence, the judge stated "I believe the State has provided sufficient evidence on each of those elements and, accordingly, I bind you over." After making this statement, the judge then acknowledged that the court "probably acted prematurely in doing this

bind over" because Dr. Becker was not given an opportunity to testify. Dr. Becker, through her attorney, then chose not to present any evidence at the preliminary hearing given the court's earlier statement that it was prepared to bind the case over for trial. Dr. Becker disputes that she was ever officially "bound over" for trial because the state trial judge did not sign the minute entry. Under very peculiar circumstances, the minute entry was later stamped with the state judge's signature several months after the minute entry was originally entered. The court clerk who stamped the minute entry with the judge's signature cannot recall whether she stamped the minute entry at the request of someone else or on her own volition. However, the court clerk's testimony is clear that she did not stamp the minute entry at the direction of the judge. Dr. Becker asserts that it is reasonable to conclude that the state improperly requested the court clerk alter the file in order to assist the state in this litigation.

Around the time of the preliminary hearing, Mr. Gardner became aware that the investigation conducted against Dr. Becker had not been performed in a manner meeting the standards of the Attorney General's Office. Specifically, the medical records were not obtained voluntarily as Mr. Gardner was originally led to believe and there never had been a return of service filed with the court with respect to the subpoenas, as required under Utah law. In addition, Mr. Gardner became aware that Dr. Vine had been consulted by MFCU and asked to determine whether Dr. Becker's billing practices were illegal, Dr. Vine concluded her billing practices were acceptable but such information was never documented in the file or provided to Dr. Becker as potential exculpatory evidence. In addition, key meetings between members of MFCU and Dr. Becker had not been documented. Mr. Gardner determined that the government would likely lose at a suppression hearing. Based upon these concerns and others, Mr. Gardner dismissed the criminal case with prejudice but then referred it to the Division of Health Care Financing for possible administrative action. An agency action was brought against Dr. Becker to collect monies allegedly over-billed, but the agency action resulted in an determination that Dr. Becker did not owe any monies for over billing.

On or about January 12, 2001, MFCU published on its website its annual report that contained a summary of the criminal accusations that had been brought and dismissed against Dr. Becker. On or about May 19, 2001, after complaints from Dr. Becker regarding alleged libelous statements appearing on the Internet, MFCU removed the article from its website. According to Dr. Becker, MFCU failed to properly remove the report and/or caused it to be placed back on the website. The report stated, under the heading of "Fraud Cases–Dismissals":

1) *Taj Becker, M.D.* This neurologist was charged with one Second Degree Felony count of False Claims for Medical Benefits. The case stemmed from Utah MFCU investigation which uncovered widespread CPT upcoding.[2] Patient records obtained from the doctor's office failed to substantiate corresponding services had been provided to justify the upcoded bills submitted to Medicaid. Fraud estimate approximated $17,000. Following the Preliminary Hearing (PH) in this case, the defendant was bound over for trial as charged, but significant

---

**2.** CPT refers to "Current Procedural Terminology" that are listed in a book of codes used for medical billing.

problems were disclosed during the PH, including key meetings with the defendant which had not been documented, and referral of the case to a neurologist expert, also not documented. Because of political pressure which had been brought on the MFCU as a result of this case and several others involving rural doctors, the case was dismissed with prejudice, and referred to the Utah Department of Health for civil or administrative recovery of the overpaid Medicaid funds.

Dr. Becker has also submitted evidence to support her theory that MFCU engaged in a pattern and practice of charging innocent physicians in rural areas with Medicaid fraud in order to generate revenue for MFCU. Dr. Becker asserts that financial incentives placed upon MFCU to improve their quarterly statistical reports to the Office of the Inspector General, which bases federal financial participation in part on fraud recovery performance and can decertify MFCU on the basis of poor recoveries, caused members of MFCU to prosecute innocent persons. Dr. Becker points to the fact that Utah's MFCU ranked highest per employee cost in the United States, except for New York and Alaska, and yet has generally the lowest fraud recovery percentage of all MFCUs in the United States. Dr. Becker claims the financial pressures placed upon MFCU to justify its existence caused MFCU to unfairly target rural doctors who were more likely to pay the requested fines than incur the high costs associated with fighting a legal battle with MFCU.

## C. Discussion

The court must first determine what constitutional rights the plaintiff claims were violated. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). Plaintiff's first cause of action alleges a violation of "the Due Process provisions of the Fourth Amendment to the United States Constitution." (Pl.'s Third Am. Compl. at 28, ¶ 111.) Plaintiff alleges in her briefs, on more than one occasion, that defendants' actions are not "in conformance with the due process requirement of the 4th Amendment reasonableness." The court is not aware of a due process provision in the Fourth Amendment, nor is it clear to the court what plaintiff means by "due process requirement of the 4th Amendment reasonableness."

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment only covers "searches and seizures." "It must be remembered that '[t]he Fourth Amendment prohibits unreasonable *seizures,* not unreasonable or ill-advised conduct in general.'" *Bella v. Chamberlain,* 24 F.3d 1251, 1256 (10th Cir. 1994) (quoting *Cole v. Bone,* 993 F.2d 1328, 1333 (8th Cir.1993) (emphasis in original)). Moreover, Fourth Amendment claims are analyzed under a reasonableness standard, not a due process standard.

Surprisingly, defendants never question plaintiff's assertion that the Fourth Amendment contains a "Due Process provision." The court is left to assume that what is really being alleged in plaintiff's first cause of action is a violation of the Fourth Amendment as well as a violation under the Fourteenth Amendment's Due

Process Clause. The Fourteenth Amendment provides, in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV. Recognizing that "[c]ertain wrongs affect more than a single right, and accordingly, can implicate more than one of the Constitution's commands," the court will endeavor to analyze plaintiff's first cause of action under both the Fourth Amendment as well as the due process protections guaranteed by the Fourteenth Amendment. *Soldal v. Cook County,* 506 U.S. 56, 70, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

Plaintiff's second cause of action is entitled "Extortion/bribery causing damage." In reality, this is not a separate cause of action, but instead, conduct that may be considered as part of plaintiff's due process claim. The court's earlier order made this clear:

[T]o the extent Plaintiff has attempted to claim a private cause of action for extortion, bribery, or for violations of the Medicaid regulations, those claims are dismissed. This alleged misconduct is relevant not to establish a private cause of action, but to establish a due process violation.

(Mem. Decision and Order dated August 28, 2002 at 9.) Accordingly, the court will not analyze extortion and bribery as a separate cause of action, but rather, as part of plaintiff's broader due process claim.

Plaintiff's remaining causes of action are much more straight forward. Plaintiff's retaliation claim implicates the First Amendment. The claim for libel is a state law cause of action. Malicious prosecution, while sometimes a state law tort, is alleged in this action as the basis for a constitutional violation under § 1983. Plaintiff's causes of action for declaratory judgment and injunction are, of course, dependent upon the success of the underlying claims. Moreover, plaintiff has conceded that her request for injunctive relief, is for the most part, moot. Plaintiff's eighth cause of action alleges that defendants conspired to violate plaintiff's constitutional rights. Finally, plaintiff's substantive due process cause of action is brought pursuant to the Fourteenth Amendment.

Despite the court's earlier order with respect to the Second Amended Complaint, plaintiff's Third Amended Complaint continues to allege causes of action against Mark Shurtleff and the other defendants in their "official capacities." "Official capacity suits represent another way of pleading an action against an entity of which an officer is an agent." *Arnold v. McClain,* 926 F.2d 963, 966 (10th Cir.1991) (internal quotations and citations omitted). With the exception of claims for prospective declaratory and injunctive relief, such claims are "barred by the Eleventh Amendment, which prohibits bringing an action for damages against a state in federal court." *Id.* These claims have already been dismissed in the court's previous order, and to the extent they have been renewed by the filing of another amended complaint, they are again dismissed.

### 1. *Defendants' Affirmative Defenses*

Defendants assert three separate affirmative defenses that warrant discussion.

#### a. *Absolute Immunity*

First, defendants raise the defense of absolute immunity for prosecutorial conduct. "State prosecutors are entitled to absolute immunity against suits brought

pursuant to § 1983 for activities 'intimately associated with the judicial ... process,' such as initiating and pursuing criminal prosecutions. Of course, 'actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.'" *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir.1994) (citations omitted). A defendant asserting absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Investigative and administrative actions taken by state prosecutors are usually adequately protected by qualified immunity, rather than absolute immunity. *Norton*, 35 F.3d at 1475; *but see Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir.1991) ("State attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial ... process.") (quotations omitted). The determinative factor is advocacy. *Norton*, 35 F.3d at 1475.

Plaintiff concedes that a prosecutor's decision to file a criminal action or an investigator's testimony at a preliminary hearing are entitled to absolute immunity. However, plaintiff asserts that her claims are based upon other administrative and investigative activities not subject to absolute immunity. The Tenth Circuit has recently noted that "[t]here is a difference between evaluating evidence in order to prepare for trial and searching for evidence that might give probable cause to bring an action." *Eden v. Voss*, 105 Fed.Appx. 234, 244, 2004 WL 1535829 (10th Cir.2004) (unpublished decision) (holding that absolute immunity did not apply for an administrative search warrant used to gather evidence with the objective being that such evidence might provide the basis for bringing an action).

"An attorney engages in an investigatory function if the attorney makes a 'preliminary gathering of evidence that might ripen into a potential prosecution.'" *Id.* (quoting *Snell v. Tunnell*, 920 F.2d 673, 692 (10th Cir.1990)).

■ Plaintiff has raised sufficient evidence upon which a trier of fact could determine that some of the alleged wrongful conduct of defendants occurred while they were acting in administrative and investigative capacities not covered by the doctrine of absolute immunity. Accordingly, the court cannot rule as a matter of law that all of plaintiff's claims are barred by absolute immunity. However, as discussed below, the court finds that absolute immunity does bar plaintiff from relying upon the filing of criminal charges to support a claim for retaliation.

b. *Qualified Immunity*

■ Even if absolute immunity does not apply, the doctrine of qualified immunity may bar plaintiff's federal claims. "Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir.2004). Defendants have properly raised the affirmative defense of qualified immunity. By doing so, the burden shifts to plaintiff to demonstrate that defendants violated a constitutional or statutory right and that the right was clearly established at the time of defendants' conduct. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185–86 (10th Cir.2001). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Id.* at 1186. The court will analyze below whether

the defendants are entitled to qualified immunity.

### c. *Governmental Immunity*

Utah's Governmental Immunity Act prohibits plaintiff from pursuing her state law claim for libel unless she can prove defendants "acted or failed to act through fraud or malice." Utah Code Ann. § 63–30–4(3)(b)(i). Plaintiff's other causes of action are part of her § 1983 claim and therefore are not subject to the state's governmental immunity analysis. "Whether the evidence in a defamation case is sufficient to support a finding of malice is a question of law." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992). "Utah courts have defined common law malice as 'ill will or spite.'" *Murphree v. U.S. Bank of Utah*, 282 F.Supp.2d 1294, 1297 (D.Utah 2003) (quoting *Cox v. Hatch*, 761 P.2d 556, 560 n. 3 (Utah 1988)).

■ Plaintiff's libel claim is based solely upon the publication of the annual report on MFCU's website. Plaintiff has conceded that her claim for libel is not applicable to defendants Kroll and Wright. Defendants raise credible arguments that the publication of the annual report may be a privileged publication that is not subject to liability for libel. The court does not need to resolve the privilege issue because plaintiff has failed to produce evidence sufficient to support a finding of fraud or malice in the publication of the report on the Internet. Consequently, plaintiff's state law claim for libel is barred by Utah's Governmental Immunity Act.

### 2. *Malicious Prosecution*

The gravamen of plaintiff's complaint is malicious prosecution. The Tenth Circuit recognizes a cause of action under § 1983 for malicious prosecution if the prosecution is conducted in a way that implicates constitutional rights. *See Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir.2004). A § 1983 malicious prosecution claim is not the same thing as alleging a state common law claim for malicious prosecution. The *Gilchrist* decision undertakes a detailed discussion of "the much-contested relationship between constitutional torts and the common law." *Id.* at 1285. The court notes "that although the common law elements provide the 'starting point' for the analysis of a § 1983 malicious prosecution claim, the ultimate question is whether plaintiff can prove a constitutional violation." *Id.* at 1288. Importantly, the *Gilchrist* decision makes clear "that federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the action originated." *Id.* at 1289.

■ The parties' briefing and oral arguments in this case devote a considerable amount of time to debating whether or not the state trial court's finding of probable cause at the preliminary hearing bars plaintiff's claim for malicious prosecution. The court agrees that an independent finding of probable cause by a trial court could be fatal to a claim for malicious prosecution under Utah common law, but the *Gilchrist* decision makes clear that it is not fatal to a § 1983 claim. *Id.* at 1290 ("We thus join the Fourth, Fifth, Seventh, and Eleventh Circuits in rejecting the view that plaintiff does not state a claim actionable under § 1983 unless he satisfies the requirements of analogous common law tort."). At its core, plaintiff's malicious prosecution claim appears to be a due process claim. Typically, § 1983 malicious prosecution claims invoke both the Fourth and Fourteenth Amendments. However, the typical malicious prosecution claim involves the Fourth Amendment because the plaintiff has been incarcerated prior to and during the criminal trial. In this case, plaintiff was never incarcerated. Accord-

ingly, her claim for malicious prosecution falls more squarely under the Due Process provision of the Fourteenth Amendment. *See also id.* at 1286 ("It is not necessary in this case to determine where Fourth Amendment analysis ends and due process analysis begins, because [plaintiff] raised claims under both constitutional provisions.").

■ The court finds that, viewing the evidence and drawing any inferences in a light most favorable to the plaintiff, there is sufficient evidence for plaintiff to maintain her § 1983 malicious prosecution action against defendants Kroll and Wright. As discussed in *Gilchrist,* if defendants Kroll and Wright were instrumental in plaintiff's continued prosecution, while knowing there was no probable cause for the charges, they cannot escape liability simply because they were not the ones who filed the criminal action. *Id.* at 1291. There are factual disputes regarding whether defendants Kroll and Wright knowingly targeted plaintiff for prosecution without sufficient basis to believe there was probable cause she committed a crime. Factual determinations as to whether Kroll and Wright hid exculpatory evidence and mislead Mr. Gardner so that he would file criminal charges cannot be resolved on summary judgment. Plaintiff will bear the heavy burden at trial of showing that defendants Kroll and Wright falsified and/or suppressed evidence and such conduct led to plaintiff's continued prosecution.

With respect to whether defendants Kroll and Wright's conduct was objectively reasonable in light of clearly established law at the time it took place so as to be entitled to qualified immunity, the *Gilchrist* decision makes clear that "no one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth was firmly established as of 1986." *Id.* at 1298.

With respect to the remaining defendants, the court finds that their conduct does not rise to the level of a constitutional violation actionable under § 1983. Dr. Terry Allen and Michelle Hebert's statistical analysis and conclusions may have been negligent, but they do not meet the requirements of a constitutional violation. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The same is true for the other defendants, the evidence presented by plaintiff may support a cause of action for negligence, but is not sufficient to maintain a § 1983 action.

In sum, plaintiff may only maintain her § 1983 malicious prosecution/due process claims against defendants Kroll and Wright.

### 3. *Substantive Due Process*

"The standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Livsey v. Salt Lake County,* 275 F.3d 952, 957 (10th Cir.2001). "[P]laintiff must do more than show the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power ... it must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (quoting *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 528 (10th Cir.1998)). The court finds that under the totality of the circumstances, plaintiff has not produced evidence sufficient to create a factual dispute that would prevent summary judgment as to the substantive due process claim. *See Oliver,* 510 U.S. at 268, 114 S.Ct. 807 ("Petitioner asks us to recog-

nize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. We decline to do so."). Therefore, plaintiff's cause of action alleging a substantive due process violation is dismissed.

### 4. *Retaliation*

■■■ "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir.2001). "Timing can be circumstantial evidence of retaliatory intent." *Id.* However, timing by itself is not enough to prove a retaliatory claim. In analyzing First Amendment retaliation claims the Tenth Circuit has declared that "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000) (quoting *Lackey v. County of Bernalillo*, 166 F.3d 1221, 1999 WL 2461, at *3 (10th Cir.1999)). In order to prevail on her First Amendment retaliation claim, plaintiff must establish the following three elements: (1) that she " 'was engaged in a constitutionally protected activity'; (2) that the defendant's actions caused [her] 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.' " *Id.*

■■■ Defendants do not dispute that plaintiff was engaged in a constitutionally protected activity, but argue that plaintiff has failed to produce sufficient evidence to meet the second and third elements of retaliation. Unfortunately for plaintiff, the most compelling evidence that might prove a claim of retaliation is the fact a criminal action was filed against plaintiff just hours after her husband testified before the Utah Legislature about MFCU's prosecutorial abuses. However, the decision made by Mr. Gardner and a screening committee at the Attorney General's office to bring criminal charges is subject to absolute immunity. Moreover, plaintiff has failed to produce sufficient evidence that defendants were "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct," or in many cases, that defendants were even aware of plaintiff's First Amendment activities. Having reviewed the evidence submitted by plaintiff in support of her retaliation claim, the court finds it is insufficient to meet the elements of a retaliation claim. Therefore, the retaliation claim is dismissed.

### 5. *Fourth Amendment Violation*

■■ Plaintiff ' claims her Fourth Amendment rights were violated by the copying of her medical records through the use of a subpoena. Plaintiff asserts that defendants' use of the subpoena failed to comply with state statutes. "It is well established ... that a state's violation of is own laws does not create a claim under § 1983." *Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir.2003). The use of a subpoena does not normally invoke the same protections as the use of a warrant because a party served with a subpoena may choose to object to or quash the subpoena in court before being required to comply. The court acknowledges that the way in which Sgt. Wright served the subpoena in this case does not comply with normal procedures, but it is undisputed that plaintiff read the subpoena and understood that she could either produce the records immediately or appear in Salt Lake City a few days later. Given the

totality of the circumstances, the court finds plaintiff has failed to create a material issue of fact regarding her claim for a Fourth Amendment violation. Thus, plaintiff's Fourth Amendment claim relating to the use of the subpoena is dismissed.

### 6. *Conspiracy*

In light of the foregoing, defendants Kroll and Wright are the only remaining defendants to this action. Plaintiff may proceed with her conspiracy claim against defendants Kroll and Wright only with respect to a theory that they conspired to deprive plaintiff of her constitutional rights through malicious prosecution.

## II MOTION TO STRIKE AFFIDAVIT

■ Defendants Kroll, Wright, Allen, Herbert, and Vanballegooie have moved to strike plaintiff's affidavit. The memorandum in support of the motion begins by stating that defendants seek to "strike portions of the affidavit" but later requests the court to strike the entire affidavit and all its exhibits. The only authority cited by defendants in support of their motion to strike are Rules 408, 410, and 703 of the Federal Rules of Evidence. Defendants do not cite any case law in support of their motion to strike, but for the most part, make broad objections as to foundation, relevancy, and hearsay. It is highly questionable whether Rules 408, 410, and 703 have any application to the facts of this case. Rule 408 does not apply when, as here, the claim is based upon wrongful acts that took place during the compromise negotiations. *See Uforma/Shelby Business Forms, Inc. v. National Labor Relations Board,* 111 F.3d 1284, 1293 (6th Cir.1997) (holding that Rule 408 is inapplicable "to suits seeking to vindicate wrongs committed during settlement discussions."). Rule 408 was designed to prevent the use settlement discussions to prove the validity or invalidity of the claim that is the subject of the compromise-not an independent claim

that arises from wrongful conduct during the negotiations. *Id.* Rule 410 is designed to prevent a plea or plea discussions from being used against the "defendant who made the plea or was a participant in the plea discussions"-not the prosecutor for wrongful conduct. Fed R. Evid. 410. Rule 703 focuses on the data underlying an expert's opinion. Opinion testimony of lay witnesses is governed by Rule 701, not Rule 703.

Defendants allege that paragraph 2 of plaintiff's affidavit is improper because it contradicts plaintiff's deposition testimony. Unfortunately, defendants do not identify what portions, if any, of the 342 pages of plaintiff's deposition testimony they believe contradict the affidavit. Nevertheless, some of defendants' objections to the affidavit are well-taken. Dr. Becker cannot testify concerning conversations to which she was not a party and/or has no personal knowledge. The court will grant defendants' motion to strike with respect to paragraphs 3(b), 8, and 10, 10(a), and 10(b) of the affidavit.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that: (1)Motion for Summary Judgment as to All Claims Against Defendants Michelle Hebert Snow, Gordon Vanballegooie and Dr. Terry Allen is GRANTED; (2) Defendants Evans and Gardner's Motion for Summary Judgment is GRANTED; (3) Motion for Summary Judgment as to All Claims against Defendants J. Denis Kroll and Jeff Wright is GRANTED in part and DENIED in part; (4) Motion to Strike Affidavit of Taj Becker is GRANTED in part and DENIED in part.

In order to schedule a new trial date in this matter, a scheduling conference is

hereby set for November 16th, 2004 at 2:15 p.m.